WESTERN UNION TELEGRAPH CO. v. WALCK et ux.

(Court of Civil Appeals of Texas. Amarillo. Nov. 29, 1913. Rehearing Denied Dec. 20, 1913.)

1. RELEASE (§ 58*) — FRAUD — QUESTION FOR JURY.

In an action against a telegraph company for injuries to a wife falling over a guy wire and stob in a public street, defended on the ground that the wife and her husband had released all claims, evidence *held* to justify the submission to the jury of the issue whether the release in form including the company, was procured by fraud.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 109–114; Dec. Dig. § 58.*]

2. RELEASE (§ 17*)—FRAUD—EFFECT.

A telegraph company, when sued for injuries to a pedestrian falling over a guy wire in a public street, relied on a release reciting that the pedestrian and her husband released from liability a railroad company and all persons or companies. The preliminary negotiations for a settlement were had between a claim agent of the railroad company and the husband and wife, who believed that the claim agent represented only the railroad company. The claim agent, with knowledge of that fact, failed to disclose the stipulation releasing other companies as well, and the husband and wife in reliance on his representations signed the instrument without reading it. *Held,* that the claim agent was guilty of fraud excusing the husband and wife from their failure to read the instrument, and the telegraph company could not rely thereon to defeat an action by them for the injuries.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 32; Dec. Dig. § 17.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by George F. Walck and wife against the Western Union Telegraph Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Veale & Davidson, of Amarillo, for appellant. E. T. Miller and Barrett & Jones, all of Amarillo, for appellees.

HENDRICKS, J. The appellees, Geo. F. Walck and wife, Ellen Walck, sued the Western Union Telegraph Company for injuries alleged to have been sustained by the wife at Des Moines, N. M., on account of falling over a guy wire attached to one of

appellant's telegraph poles and a "stob" in a public road or street, while traveling from her home at night to said town. The result of the fall, on account of pregnancy, produced a miscarriage and premature birth of a child, and consequent suffering and weakness. The matter of the injury, the negligence of the telegraph company and its original liability, aside from the matter of a release, are not seriously at issue upon this appeal. The question principally involved arises upon the following release, executed by the appellees, as a determination of their rights, and we omit certain notations and statements upon the release which we do not think are germane to the discussion.

"In consideration of the sum of two hundred fifty and no/100 dollars ($250.00) to me in hand paid by the Colorado & Southern Railway Company, receipt whereof is hereby acknowledged, I, do hereby fully and forever compromise and settle with and release and discharge said railway company and all railway companies whose lines are operated by or in connection with the said the Colorado & Southern Railway Company, or which are a part of the system of the said company, and any and all persons or companies of every description, who, or which, may have contributed in any manner by any act or omission, from any and all claims, demands or causes of action which now exist, or may hereafter arise, by reason of any and all personal injuries, of whatever character or description, sustained by me on or about the 9th day of December, 1911, at or near Des Moines, state of New Mexico, while walking along street or road I struck a guy wire to a telegraph pole and fell to ground. At the time of said accident I was pregnant and the blow resulted in premature birth of child which lived about two hours. Also for all expenses incurred by reason of the said accident and also for loss of services and companionship of my said wife, Nora Ellen Walck.

"Bill for Voucher.

"Meaning and intending hereby to discharge and hereby discharging said companies and persons and each of them from any and all demands and claims as fully as if said injuries, whether present or future, were all described herein in detail.

"I have read and fully understand the foregoing instrument and agree to same and hereto affix my hand at Des Moines, N. M., this third day of February, A. D., 1912, as my free and voluntary act and deed. Nora Ellen Walck. [Seal.] George F. Walck. [Seal.]

"Correct. Calculations correct. [Signed] W. F. Dobecki. [Signed] R. H. Doolittle, Claim Agent. [Signed] J. H. Bradbury.

"Approved: [Signed] J. D. Welsh, General Superintendent.

"Approved: [Signed] S. G. Arscott, for Vice President.

"The above account has been examined, found correct and is hereby approved for payment. [Signed] J. H. Bradbury, General Auditor.

"Witnesses to signatures: J. M. Kimmel, address, Des Moines, N. M.; C. J. Niehous, address, ———.

"Received February 3rd, 1912, from the Colorado & Southern Railway Company, in full payment of above account. Two hundred and fifty and no/100 dollars. $250.00. Note: The receipt to this voucher must be dated.

"Voucher is made, or when signed by another."

It is noted that in literal language the Western Union Telegraph Company is not a party to the instrument, but claims to be embraced in the following language: "Any and all persons or companies of every description, who, or which, may have contributed in any manner by any act or omission"—which, connected with the releasing and discharging clause of the instrument, provide for its exoneration from damages. This release was attacked by the appellees on the ground of fraud, alleging that the same was void: "Because at the time of and before same was signed, the Colorado & Southern agents and servants who procured such instrument as was signed procured same by representing that the said railway had nothing to do with the said wire or telegraph line; that they were not liable in any way to him; that the railway had sold its interest in the said telegraph line, and that they would give him $250 as a donation or gift, and that same would not interfere in any way with his real claim against the Western Union Telegraph Company (against) whom said servants said he could recover; * * * that the said paper was signed late at night while said wife was in bed sick, and in no condition to, and when she did not and could not, read or understand said release, and plaintiff himself had no glasses, and was unable to read at night, and did not read and could not read said instrument but relied on said servant's and agent's representations; * * * and that said instrument was signed with the specific understanding and assurance that it would not interfere with said plaintiff's cause of action." Appellees further alleged that "the parties who procured said instrument undertook to tell plaintiff the substance and form of same, and assured him that it was as above set out," and with the further allegation that plaintiff and his wife believed the representations made and relied upon same when the instrument was executed.

The fifth assignment of error, which we think is the first one material in this record which we should notice, is that the court erred on account of the submission of the eighth paragraph of his main charge to the

jury, complained of by three propositions as follows:

(1) That the charge "directs the jury that they may find for the plaintiffs on a state of facts not proven on the trial of the case."

"(2) The failure of the claim agent Niehous to acquaint appellees with the fact that the effect of the release was to discharge the appellant, and the fact that appellees signed the release in question without knowledge of its true contents, effect, and import would not be sufficient to avoid the release.

"(3) In the absence of proof that plaintiff was prevented from reading the release, or that it was misread to him, it was error for the court, in the eighth paragraph to allow the jury to find against the release; it being on its face a full and complete satisfaction of plaintiff's damages and a release of all persons and corporations."

The following is· the paragraph of the charge complained of: "On the other hand, if you believe from the evidence that C. J. Niehous, the claim agent of the Colorado & Southern Railway Company, represented to plaintiffs that the said railway company was not liable to them, but that any claim they might have was against the defendant, Western Union Telegraph Co., and that the said receipt and release contract, signed by them, would not interfere in any way with their cause of action, if any, against defendant telegraph company; and you believe further that the $250 mentioned in said contract of release was a mere gratuity or gift from said railway company and said Niehous, and not a settlement of the case; and you further believe from the evidence that the plaintiffs believed said representations to be true, and that they in good faith received and accepted said sum as a gift or gratuity and not as a settlement and satisfaction of any damages or losses which they may have sustained by reason of the accident in question; and you further believe that said Niehous paid over to plaintiffs the money, and procured from them the said release, and that in so doing he represented to them that said release was merely a receipt for the money; and you further believe that they accepted said money and signed said receipt and release without knowledge, on their part, of the true contents, effect, and import of the same, and that said Niehous purposely withheld and concealed from plaintiffs that said instrument purported and had the effect of releasing any claim for damages they may have had against the Western Union Telegraph Company—then, if you so find and believe from the evidence, the said release will not operate as an acquittance to said telegraph company, and would not deprive plaintiffs of the right to recover in this case, if you believe they are entitled to recover under the evidence and the law given you elsewhere in this charge."

The evidence discloses that prior to the execution of the release, preliminary nego-tiations with reference to settlement had been made between the parties, the claim agent Niehous having been in Des Moines three or four days prior to the execution of the release, for the purpose of investigating the matter, that upon his last visit, immediately prior to the execution of the release, appellees, Walck and wife, had offered to accept $400 in settlement of their claim against the Colorado & Southern Railway Company, and that at this time said claim agent representing the said railway company, offered the sum of $250, which was rejected. We conclude that at no time during the negotiations did appellees Walck know that the claim agent Niehous was in any manner representing the Western Union Telegraph Company, but believed that he was representing solely and exclusively the Colorado & Southern Railway Company. We find that the appellees inquired of this claim agent, at the time of the last visit that the latter made to Des Moines for the purpose of settling the claim prior to the execution of the instrument, if the Western Union Telegraph Company was concerned in the matter of settlement, and that said Niehous answered that he did not know. We find that the appellees did not have any knowledge of the true contents, effect, and import of said instrument at the time of its execution. Niehous says: "They asked me whether the Western Union was concerned. I told them I did not know, and I did not at that time," but "before I went to Des Moines [the last time when he made the settlement] I learned that the Western Union was concerned." Again he said: "I never said anything about the Western Union being concerned in the release. They were once talking about the Western Union, and I told them I did not know about it." He further says, meaning at the time of the settlement: "It was not necessary for me to mention the Western Union. ·I did not purposely leave out the Western Union. *It just happened* that nothing was said about it." He claims that the night the release was made he said nothing to the appellees, except that he informed them that the release was a full release for the accident and the injury. He also says that appellees understood the release, and we presume and find that this is the manner this witness claims they understood it: "I did not say 'against all companies' [meaning, of course, that he did not inform them that it was a release against all companies]. I said, 'Do you understand that you are through with this matter, and that this releases for this accident entirely?'" Of course the question is naturally suggested, With whom and with what companies the appellees had finished their negotiations? As stated, these people had been dealing with him as the agent of the Colorado & Southern, and not as a representative of the Western Union. They had asked him if

the Western Union was concerned in settlement, and he had informed them that they were not. Unless they had some other knowledge from another source, not apparent in this record, we do not understand how it could be urged that this witness imparted any information, especially with reference to the Western Union Telegraph Company, and we find that the communications which he claims he actually made are in the nature of suppression and deceit. He knew that they were dealing with him as the agent of the railway; even according to his own testimony he had acquired information before the night of the settlement that the Western Union was directly interested, and upon paying them cash in the sum of $250 upon that particular occasion, he immediately drew upon the Western Union for the full amount, evidently for reimbursement. We think this witness was mistaken when he says that it was not necessary for him to mention the Western Union when this release was executed, and that "it just happened" that nothing was said about the matter, and that a consistent course to exclude information with reference to the real beneficiary of this release and of this settlement, for the purpose of obtaining a settlement of this character from these people, was in reality practiced by this claim agent. We find that he informed the appellees he was a lawyer, and that he informed them that he knew that the Colorado & Southern was not liable for any damages with reference to the guy wire over which the woman stumbled, and further informed them that their ground of action was against the Western Union, and that he understood the situation because he was an attorney. On the night of the execution of the release, a smoky lantern was the light afforded for that purpose. In accordance with the verdict of the jury and the testimony of the appellees, by which we are bound, we find that the appellees did not read this release upon this occasion, and that neither Walck nor his wife knew that the language purporting to release their claim for damages "against all companies" was contained in said instrument. We also conclude: That upon this particular night this claim agent improperly suppressed the fact to these people that the Western Union Telegraph Company was interested in said settlement, and further find that they would not have signed the same if they believed that it purported to settle their claim against that company. The 30th of January, at the time the appellees demanded $400 and $250 was offered, was the date of the principal negotiations between the agent and the appellees, and on February 1, 1912, immediately following, Mrs. Walck dictated the following letter, written by her husband, however signed in her name, and which was an attempted offer of acceptance of the $250, the proposition previously rejected by them:

"Des Moines, N. M. Feb. 1, 1912. Mr. C. J. Niehous, 827 Cooper Building, Denver, Colo. —Kind Sir: As I am not getting my health here as fast as I ought to and I will have to be taken away from here at once to a lower altitude, and have to be treated there by a good doctor for my hips as I am getting weaker and the circulation is not right in my lower limbs; I have come to think that I will better take the $250.00. Now this is small for my suffering and the loss of my baby, and it will take nearly all of it to pay our debts here for we must pay our doctor. I have been since the night of the 9th of December, 1911, until now not able to do anything, and have been in pain most of the time. Please let us know just when you will be here. I think the C. & S. R. R. Co. ought to furnish us tickets to Shattuck, Okla. I am, Very Respectfully, Mrs. Nora Ellen Walck, Des Moines, N. M." That the agent Niehous received said letter on the morning of the 3d of February, arriving at Des Moines, N. M., at 11 o'clock at night, said settlement having been effectuated between 11 and 12—about 30 minutes being consumed for that purpose—and that upon the particular occasion Mrs. Walck, who in this record was at least acting as the agent of her husband, with reference to some of the negotiations and the writing of said letter, was in bed and in a weakened condition.

[1, 2] The appellant's first proposition leveled at the charge of the court, quoted by us, complaining that it was a submission to find for the plaintiff on a state of facts not proven on the trial of the cause, is not sustained by the record; and the second proposition, that the failure of the claim agent to acquaint appellees with the true contents of the release would not be sufficient to avoid said release, is a singling out by appellant of one particular phase of the evidence, which, with other evidence in the case, we think is sufficient to sustain the verdict of the jury as to the voidability of said instrument; and, as to the third proposition, that in the absence of proof that plaintiff was prevented from reading the release, or that it was misread to him, the court erred in its submission of said charge to the jury, we think that the line of authorities apply that (although we should assume that the most of the acts and representations were made just a few days prior to the execution of the release) the appellees had the right to rely upon the statements of the claim agent, and if they did not read the release, were thrown off their guard, believing that it was solely a settlement with the Colorado & Southern Railway Company, and that the Western Union was not concerned in it. Even if most of the representations were made on the 30th of January, upon which appellees relied, the appellant's agent knew at the time he received the letter on the 3d of February, accepting the $250 proposition, that

these people believed that they were accepting a proposition with the Colorado & Southern Railway Company, and with no other company, and his conduct, at the time the release was executed, relative to the suppression of material facts, connected with the statements made by him and the negotiations which had transpired between them prior to that time, indicate a case of fraud, which, we are inclined to think, even if there were some opportunity afforded to the appellee to read the release at the time it was executed, was calculated to throw the appellee off his guard, and it does not lie in the mouth of appellant to say, "You should have read the release, and if you did not do so, you are bound by its contents."

The case of Labbe v. Corbett, 69 Tex. 503, 6 S. W. 809, decided by the Supreme Court of this state, speaking through Justice Stayton, was one involving a transaction whereby Corbett agreed that Labbe should have the use of 1,000 "picked" ewes for the period of three years, and under this agreement 1,000 ewes were delivered. The trial court instructed the jury as follows: "The jury are further instructed that if the defendant Labbe knew of the diseased condition of said sheep when he received them, under said contract, or by the use of ordinary care and diligence could have known of their diseased condition, then they are further instructed that such diseased condition of said animals, or subsequent loss therefrom, is no defense in this action to the plaintiff's demand, and you will find for the plaintiff." The appellant assigned this charge as error. The Supreme Court, in commenting on this charge complained of and given by the trial court, used the following language: "This charge is assigned as error, in that it makes the appellant liable, although the jury may have believed that the appellee made the misrepresentations alleged to have been made by him, if by the exercise of ordinary care and diligence the appellant might have ascertained that the representations were not true. * * *" In this case the real diseased condition of the sheep was known by appellee when the same were delivered, and the appellant, with his agents, in person received the sheep, and it seems that some of the agents who were with him at that time knew of the diseased condition, but that appellant did not. The Supreme Court said, "The misrepresentation alleged to have been made was one material in character, and, if made, calculated to prevent an examination by the appellant for himself to ascertain the true condition of the sheep, and it related to a matter of which the appellee, from his own statement, had actual knowledge," and quoting from the English case of Railway Company v. Kisch, L. R. 2, H. L. 120, Justice Stayton continues: "When once it is established that there has been any fraudulent misrepresentation by which

a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector, 'You, at least, who have stated that which is untrue * * * for the purpose of driving me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.'" The appellees, Walck and wife, said that they relied on the statements made by Mr. Niehous, and the husband said that Niehous "acted very friendly with him." Justice Stayton concluded that such a charge, under the evidence in that case, to the effect that if a man receiving the sheep could have known of their diseased condition by the use of ordinary care, in view of the fraud and misrepresentation, was error, and upon that and another ground reversed the cause. In this case the jury having found the fraudulent representations, and the fact that the appellees relied upon the same, we are inclined to think and so hold that appellant is not in a position to complain of the verdict of this jury, and believe that a clear cause of fraud was made out against appellant.

In this connection, the ninth assignment of error is a complaint because the court refused to give in charge to the jury a requested instruction, to the effect that if the jury find that the witness Niehous presented to plaintiff and his wife the release in evidence, and they had the opportunity to read the provisions of said release and knew or could have known by the exercise of ordinary care the contents of said instrument, and knew or could have known by the exercise of such care that they were releasing all other companies and persons who might have been connected with the placing of the guy wire in question, and further believed that no deception was practiced by Niehous against plaintiffs to find for the defendant company. If no deception was practiced by Niehous against the man and his wife, of course they could not recover in any event, and the question of fraud, we take it, was amply submitted to the jury, at least as against the objections we find in this brief leveled at the charge of the court. If there were fraud in the transaction, which the jury found, we believe that a sufficient analogy exists between this case and the Labbe-Corbett Case for its application to this record, and in holding that the other elements of the special charge submitted by appellant, with reference to the opportunity to read the release and the matter of appellees' negligence in not reading the same, were inappropriate to this case. That part of the special charge is, in substance, the same as the court gave, discussed in the Labbe-Corbett Case, and which Justice Stayton condemned as improper. Again, the Supreme Court has said: "The defendant in error claims that Mrs. Conn was guilty of negligence in signing the

deed of trust without reading it, and therefore the court ought not to reform the instrument according to her testimony. If the failure to read the instrument was unexplained, and there was no reasonable excuse for it, this proposition would be correct, but, when the party is misled by the fraudulent representation of the other party, and caused, by confidence in such person and his representations, to sign the instrument without reading it, this does not constitute such negligence as will deprive the maker of the instrument of equitable relief from the consequences of the fraudulent representation. Chatham v. Jones, 69 Tex. 744 [7 S. W. 600]." 'Conn v. Hagan, 93 Tex. 338–339, 55 S. W. 323.

Appellant asserts that certain representations were made beforehand, and if those were not repeated or made at the time of the execution of the instrument, and if they had the opportunity to read the same, there could be no recovery. In view of the previous negotiations, when the letter was dictated by Mrs. Walck and written by her husband, and 'received by Niehous and accepted by him, which appellant insists was done in ·discussing another phase of the case, the settlement and , release are bound to have been based, and their minds met, upon what had transpired, and the Western Union was excluded between these parties from all negotiations, and with reference to which the claim agent had full knowledge. Confining this opinion to questions distinctly raised, and not considering questions outside of the scope of the assignments and propositions made by appellant, and having attempted to carefully consider this record and all the assignments of the appellant, and believing that the cause should be affirmed, we overrule all other assignments not discussed by us; the previous discussion, we believe, sufficiently concluding the material assignments of appellant.

Affirmed.