FIORITO et al. v. CLYDE EQUIPMENT CO.

(Circuit Court of Appeals, Ninth Circuit. December 15, 1924. Rehearing Denied February 2, 1925.)

No. 4262.

**1. Appeal and error ⬅1170(1)—Where all issues including equitable defense tried on law side of court, Circuit Court of Appeals considers substance only.**

Under Judicial Code, §§ 274a, 274b (Comp. St. §§ 1251a, 1251b), where all issues including equitable defense were tried and determined on law side of court, Circuit Court of Appeals, on reviewing case, ignores irregularity of procedure and considers substance only.

**2. Reformation of instruments ⬅30—Written contract affected by fraud cannot be ignored, but must be reformed precedent to recovery on prior oral agreement.**

Written contract, though affected by fraud, cannot be ignored and action maintained on prior oral agreement, but it must be reformed precedent to any recovery on oral agreement.

**3. Reformation of instruments ⬅45(15)—Evidence held to show misrepresentations by seller's agent inducing buyer to sign contract.**

Evidence held sufficient to show that buyer was induced to sign contract for purchase of machinery by fraudulent representations of seller's agent that part modifying prior oral agreement for general warranty, which buyer did not read, related only to payments, entitling buyer to reformation.

**4. Sales ⬅442(1)—General warranty machinery will fulfill requirements carries liability for special as well as for general damages.**

Seller's general warranty that machinery will fulfill buyer's requirements carries with it liability for special as well as for general damages.

**5. Reformation of instruments ⬅25—Party fraudulently induced to sign written contract, though negligent, entitled to reformation.**

Where party's signature to contract is secured by misrepresentations as to its contents, contract must be reformed to comply with prior oral agreement, though aggrieved party was negligent and foolish to believe other in signing contract without reading it.

**6. Reformation of instruments ⬅45(2)—Evidence that written contract or signature thereto procured by fraud must clearly overcome presumption of validity of writing.**

Where party claims written contract or his signature thereto was procured by fraud, evidence should be severely scrutinized, and, unless it clearly overcomes presumption in favor of validity of writing, writing prevails.

**7. Sales ⬅38(8)—Second contract for machinery held fraudulently secured, though no contemporaneous oral misrepresentations made by seller's agent.**

Principle that contract signed without being read is fraudulently procured, if altered in preparation and presented without calling attention to change, held applicable to second contract for road machinery, though no contemporaneous oral misrepresentations were made by seller's agent.

**8. Sales ⬅38(8)—Fraud in procuring buyer's signature to contract held to affect subsequent contract for additional machinery executed few days later.**

Where buyer's signature to written contract for machinery was procured by misrepresentation as to contents, second contract for additional machinery, executed few days later, was affected by same fraud, though no further misrepresentations were made, since buyer could presume second contract conformed to what he believed was in first, save as to changes agreed on.

**9. Evidence ⬅66—Seller's agent conclusively presumed to know terms of written contract prepared and presented by him.**

Seller's agent is conclusively presumed to know terms of written contract prepared and presented by him, contents of which he misrepresented to buyer.

In Error to the District Court of the United States for the Western District of Washington, Northern Division; Edward E. Cushman, Judge.

Action by N. Fiorito and others, copartners doing business as Fiorito Bros., against the Clyde Equipment Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions.

Grinstead, Laube & Laughlin and Thomas E. Davis, all of Seattle, Wash., for plaintiffs in error.

Van Dyke & Thomas, of Seattle, Wash., for defendant in error.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

BOURQUIN, District Judge. [1] Plaintiffs in error brought this action at law to recover special damages arising from breach of warranty. Defendant answered that the contract is in writing, and from the warranty excepts special damages. And plaintiffs replied that they signed the writing without reading it and in reliance upon defendant's misrepresentation that it conformed to the prior oral agreement for a general warranty.

In this anomalous state of the pleadings, without repleader or transfer to the equity side of the court and without any appropriate objection to procedure or evidence, there was trial of all issues, including the equitable issue tendered by the reply. At the conclusion of the evidence the trial court determined the equitable issue adversely to plaintiffs, and directed a verdict for defendant for a balance of account by it claimed. All issues thus tried and determined, our review also ignores irregularities of procedure, takes account of substance only, and, in compliance with statute, renders "such judgment upon the records as law and justice shall require." Sections 274a, 274b, Judicial Code (Comp. St. §§ 1251a, 1251b); Liberty Oil Co. v. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232; Mobile, etc., Co. v. Federal Bridge & Structural Co. (C. C. A.) 280 F. 292; Plews v. Burrage (C. C. A.) 274 F. 881.

[2] Incidentally, and contrary to plaintiffs' theory, although a written contract be affected by fraud, it cannot be ignored and action maintained upon the prior oral agreement, but must be reformed precedent to any recovery. Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140. The case is common, the evidence without material conflict, and the law fairly settled in principle.

[3] The facts are that defendant, by its salesman, Balzer, undertook to determine and supply plaintiffs' needs in respect to instrumentalities with which to perform their extensive highway building contracts. Amongst those settled upon are the rock breaker and crusher rolls of this suit. These latter Balzer warranted generally to fulfill plaintiffs' requirements and the rolls particularly of certain capacity. A written warranty contemplated, Balzer prepared a writing upon defendant's form and purporting to contain the entire contract. In the beginning in typewriting it describes the instrumentalities and informally sets out the warranty. In the body in some 25 closely printed lines of small type, it excepts special or consequential damages from the warranty, and contains the usual "expressly agreed" it is the entire contract, and that no salesman has authority to otherwise obligate defendant; and in conclusion, in typewriting, it stipulates the amount and installments of purchase price and the rate of interest.

The circumstances attending plaintiffs' signature to this writing are related by Nick Fiorito and Balzer.

Fiorito testified: That several days subsequent to the agreement for purchase and warranty, Balzer presented this writing to him for signature. That he read the warranty, and then said to Balzer: "Do I need to read further on this printing part?" That Balzer responded: "You do not need to read the printing part, unless you want to get information how you are going to take care of your payments." That Fiorito said: "If that is all it is, I am not worrying about making any of my payments." That Balzer answered: "Then you do not need to read it." That he read no more, signed the writing in duplicate, and retained one copy, which he placed in his safety deposit box. That a few days later Balzer informed him a larger rock breaker was necessary, and presented him a like writing save substitution of a larger breaker and, on his request, 7 per cent. on deferred payments instead of the 8 per cent. in the first writing. That again he signed without reading, and only the one copy retained by Balzer; Fiorito then or later by mail receiving a copy unsigned by him.

Balzer testified to nothing of the circumstances attendant upon the signing of the first writing, save that he recalled nothing Fiorito "questioned about the contract outside of the guaranty. He wanted this guaranty put in." Balzer further testified that the change in the rock breaker was Fiorito's determination; that when the second writing was presented he did not advise Fiorito not to read it, nor did he at any other time; that Fiorito "wanted to be sure the guaranty was in there, * * * and he seemed to be very anxious to find out what was in the contract"; that he "left him at the desk signing the contract," and did not know whether he read it; and that Fiorito received a copy then or later by mail.

Shortly thereafter the machinery was delivered, and there is substantial evidence that it did not satisfy the warranty, to plaintiffs' damage by them claimed.

At the conclusion of the evidence the District Court orally determined the issues, but

in holding that the evidence did not establish the misrepresentation or fraud alleged, the court unfortunately failed to remember the vital substance of it. As the court erroneously put it:

"At the utmost, Mr. Nick · Fiorito says, 'Is that guaranty in there?' That was what he was particularly concerned with, and he read the typewritten guaranty, and then he said to Mr. Balzer, 'Do I have to read all this printing?' And in fact Mr. Balzer, being thus appealed to, says, 'Well, about all there is there is the terms of payment.' That falls away short of anything like a trick or artifice to throw Mr. Fiorito off his guard. * * * He tries to relieve himself of the responsibility of reading that by asking this question of Mr. Balzer, when Mr. Balzer had done nothing whatever to invite any such question."

It is very obvious that Fiorito's testimony is far greater in volume, materiality, and weight than is indicated by the trial court's very faulty recollection of it; and in our opinion it and the circumstances which fortify it disclose a case of fraud which entitles plaintiffs to reformation of the written contract to conform to the oral agreement of warranty which preceded the writing.

[4] To that warranty the law attaches liability for special as well as general damages. Balzer excluded the former in the written memorial by him prepared, and deprived the warranty of its principal protection to plaintiffs.

The writing, with the warranty thus qualified and limited, he presented to Fiorito for signature, without informing him that it radically departed from the agreement. Then occurred the aforesaid conversation between them, which fully apprised Balzer that Fiorito did not read and discover the change in the warranty, by reason of his acceptance of the former's assurance in effect that the printing containing it was naught but terms of payment of the purchase price.

In all this was artifice and deception well calculated to deceive Fiorito in respect to the contents of the writing and to induce him to sign without reading, as he did to Balzer's knowledge.

[5] Defendant's contention that relief must be denied for that, not its fraud, but plaintiffs' negligence, is the cause of the latter's loss of the agreed general warranty, has support in some cases (perhaps more or less impatient of the difficulties of parol, of proof, and decision); but the better principle and the trend of authority in further-

ance of common honesty in bargaining are that fraud is fatal, whatever its form or strategy, that a writing procured without reading, by misrepresentation of its contents, is vitiated by the fraud as much as though agreement to the contents had been secured by misrepresentation, and that he who thus signs without reading is entitled to relief in equity. Otherwise is to punish virtue and to reward vice, to discourage generous confidence and to encourage vicious betrayal, to abuse the function of courts and to do violence to the spirit of justice. That the aggrieved party was negligent and foolish to believe the other, who proves to be a knave, is a derisive and arrogant defense, offensive to a court of equity, ought not to be favored, is unworthy to be the basis of decision, and is unnecessary to maintain the integrity of written instruments.

Every case depends upon its own facts, their sufficiency to constitute fraud, and due proof of them, in which negligence has no proper place.

[6] When a question of veracity whether the writing in agreement or signature was procured by fraud, the evidence should be severely scrutinized; and unless it clearly overcomes the presumption attaching to the writing, the latter will incline the scale in favor of its own validity. But where, as here, the proof is clear, the writing must be reformed. The settled law of Washington, the state of the instant contract, maintains this wholesome doctrine. Says the Supreme Court in a like case, Stone v. Moody, 41 Wash. 686, 84 P. 619, 5 L. R. A. (N. S.) 799:

"Where it is to the court perfectly plain that one party has overreached the other, and has gained an unjust and undeserved advantage which it would be inequitable and unrighteous to permit him to enforce, we do not believe that a court of equity should hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness. * * * The evil effect of court decisions which permit the wrongdoer to enjoy the fruits of his chicanery is of no small import when viewed from the standpoint of public policy."

See, also, Rathbone, etc., Co. v. Frost, 9 Wash. 162, 37 P. 298; Lilenthal v. Herren, 42 Wash. 209, 84 P. 829; Titan Co. v. Richardson, 122 Wash. 452, 210 P. 790; Continental, etc., Co. v. Longley Motor Sales Co., 43 R. I. 552, 113 A. 869; Finkelstein v. Henslin, 152 Minn. 386, 188 N. W.

737; and cases cited in 13 Cor. Jur. 371; 26 Cor. Jur. 1144, 1147.

[7, 8] In this doctrine is no departure from the policy of written contracts and parol evidence. On the contrary, it is an important element of that policy, necessary to foil invocation of it to defeat its own object and to protect fraud. There are cases that with justice hold that a contract signed without reading is fraudulently procured, if altered in preparation and presented without calling attention to the change. Western, etc., Co. v. Cotton, 126 Ky. 749, 104 S. W. 758, 12 L. R. A. (N. S.) 427. Their principle applies to the second writing which Fiorito signed without reading, although no contemporaneous oral misrepresentation was made by Balzer. But aside from that, Fiorito signed subject to the circumstances and misrepresentation of the first writing only a few days before, and with just presumption that the second conformed to what he believed was in the first, save to the extent of changes by the parties agreed. That is, the fraud attending the first writing had not spent its force, continued to operate upon Fiorito, and inspired his action in respect to the second writing.

Like comment applies to the writings' limitation upon Balzer's ostensible power as salesman to warrant the machinery, which limitation was not brought to plaintiffs' notice.

[9] There is no evidence to support the trial court's speculation that perhaps Balzer had forgotten that the writing altered the agreement. Moreover, he is conclusively presumed to know the terms of the writing he prepared and presented.

Defendant makes no claim and there is no evidence that prior to delivery of the machines plaintiffs had discovered the fraud and waived it by acceptance and acquiescence.

We note abuse of paragraph 4, rule 14 of this court, which provides for transmission hither of exhibits, the physical attributes of which have evidentiary value. Under its guise the parties procured transmission of a six-inch roll of bills, letters, contracts, etc., obviously not within the rule, and excluded them from the record.

We decline to winnow this disorderly mass of chaff for any wheat that may be concealed in it.

The judgment of the District Court is reversed and the cause remanded, with directions to reform the written contract to conform to this opinion, and to proceed to a new trial of the issues of rescission, damages, and balance of account.