## WHITNEY CO. v. JOHNSON.[*]

(Circuit Court of Appeals, Ninth Circuit. July 12, 1926. Rehearing Denied September 7, 1926.)

No. 4815.

1. Trial ⊜▬178.

On motion for directed verdict, court must view testimony from standpoint most favorable to party against whom directed verdict is requested.

2. Action ⊜▬24.

Under Act March 3, 1915 (Comp. St. §§ 1251a–1251c), proof of fraud inducing execution of release of liability for death is available in court of law.

3. Trial ⊜▬4.

In absence of request therefor, it need not be determined whether parties were entitled to have equitable issue presented in law case first determined by court.

4. Release ⊜▬58(6).

In action for wrongful death, evidence of fraud in procuring release of liability on payment of funeral expenses *held* insufficient for jury.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action by Ranghild Johnson against the Whitney Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for a new trial.

Simon, Gearin, Humphreys & Freed, Wilbur, Beckett, Howell & Oppenheimer, and Wilber Henderson, all of Portland, Or., for plaintiff in error.

B. A. Green and Louis V. Lundburg, both of Portland, Or., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This was an action to recover damages for death by wrongful act or neglect. The plaintiff in the action was the mother of the deceased; the defendant was his employer. One of the defenses interposed by answer was a release of the claim for damages, executed by the plaintiff. The validity of the release was challenged by reply because of fraud in its

*Certiorari denied 47 S. Ct. —, 71 L. Ed. —.

execution or procurement. At the close of the testimony the defendant moved for a directed verdict in its favor on the ground that there was no sufficient evidence of fraud in the execution or procurement of the release to warrant the submission of that question to the jury. The challenge was denied and the trial resulted in a verdict and judgment for the plaintiff. The case·has been brought here by writ of error, and the denial of the motion for a directed verdict is the only question presented for our consideration.

[1] As against such a, motion the court must view the testimony from the standpoint most favorable to the defendant in error. Viewed in that light, her version of what transpired, and all that transpired, at and preceding the execution of the release, was the following: About five weeks after the death of her son, she wrote to the plaintiff in error, asking what it intended to do or would do in regard to the funeral expenses. In response to this letter an agent of the plaintiff in error called upon her at her home and asked for the bills. Having received them, he computed the amount and said: "We will pay that." The conversation at that time had reference to the funeral expenses only. The defendant in error at no time discussed her legal rights with the agent. She was informed by him, however, that she could recover nothing beyond the funeral expenses. About three hours after the first visit the agent returned, accompanied by a second party, to whom the defendant in error referred as a lawyer, but who was in fact another agent of the plaintiff in error and of an insurance company as well. The release was then presented to her and a copy to her husband, who was present. She was in a very nervous state. When she took the pen in her hand, she could not write and threw the pen aside. She was twice told to take her time, and the release was finally signed or executed by her. The agent did not read the release to her, and did not inform her of its contents; nor was the release read by her or by her husband. When the agent gave her the check, he stated that he was paying the funeral expenses, or for the funeral expenses. Any finding of fraud in procuring the release must find its support in the foregoing testimony.

[2] There is some discussion in the briefs whether the fraud relied on was fraud in the execution of the release, or in misrepresentation as to material facts inducing its execution, and whether proof of fraud of the latter kind is available in a court of law. Where the distinction between actions at law and suits in equity is still maintained, there

is considerable conflict of authority on the second question. In Wagner v. National Life Ins. Co., 90 F. 395, 33 C. C. A. 121, it was held that it was proper in an action at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud was in the execution or in misrepresentation as to material facts inducing the execution. The opinion in that case was written by the present Chief Justice, and was concurred in by Judge Lurton. In Hill v. Northern Pac. Ry. Co., 113 F. 914, 51 C. C. A. 544 this court said that the ruling in that case seemed to be in conflict with certain decisions of the Supreme Court and other federal cases there referred to, but the question was not decided. Whether the ruling in the Wagner Case was correct at the time is not very material, because such is now unquestionably the rule under the Act of March 3, 1915 (38 Stat. 956 [Comp. St. §§ 1251a–1251c]), amending the Judicial Code. That act reads as follows:

"That in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of seeking the relief prayed for in such answer or plea. Equitable relief respecting the subject-matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication. Review of the judgment or decree entered in such case shall be regulated by rule of court. Whether such review be sought by writ of error or by appeal the appellate court shall have full power to render such judgment upon the records as law and justice shall require." Comp. St. § 1251b.

See, also, Union Pac. R. Co. v. Syas, 246 F. 561, 158 C. C. A. 531.

[3] Whether the parties are entitled upon a proper request to have the equitable issue first determined by the court, as was held in the case just cited, we need not inquire, because no such request was made in the court below. Fiorito v. Clyde Equipment Co. (C. C. A.) 2 F.(2d) 807.

[4] The question still remains: Was there any competent evidence of fraud to go before the jury? While, at the time of executing the release, the defendant in error was in a nervous state, her capacity to contract is not questioned. According to her own testimony she failed to read the release, although she had ample opportunity to do so, and there is an entire absence of any testimony tending to show any misrepresenta-

tion as to the contents of the instrument, or any fraudulent misrepresentation as to any matter of fact to induce her to execute it.

"The only fraud that could avoid the release would be misrepresentation as to the contents of the deed or some fraudulent misrepresentation of a matter of fact to induce the plaintiff to execute it." Richards v. Turner, 1 Fost. & F. 1.

"If a party who can read  *  *  *  will not read a deed put before him for execution, or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law." Per Gibson, Chief Justice, in Greenfield's Estate, 14 Pa. 496.

"It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." Upton v. Tribilcock, 91 U. S. 45, 50, 23 L. Ed. 203.

The court quoted these authorities in Wagner v. National Life Ins. Co., supra, and said:

"Giving full credit, however, as we must, in this inquiry, to her statement that she signed the surrender without knowing its contents, we are clearly of opinion that this does not invalidate the surrender, or destroy its effect as a complete bar to action on the policy. The rule to be gathered from the authorities is that neither law nor equity will give any relief to one who, being able to read, signs a paper without reading it, unless it is made to appear that his failure to read is due to the fraud or imposition of the other party."

In Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 83 F. 437, 28 C. C. A. 358, the court said:

"A written contract of release cannot be annulled or avoided by proof that one of the parties to it, who was sound in mind and able in body, could not read or write, did not know the terms of the agreement, and neglected to ask any one to read it to him when he signed it. A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and prob-

ably will, pay his money and shape his action in reliance upon the agreement. He owes it to the public, which, as a matter of public policy, treats the written contract as a conclusive answer to the question, what was the agreement? If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. If he cannot read it, it is as much his duty to procure some reliable person to read it and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so; and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents. This is a just and salutary rule, because the other contracting party universally acts and changes his position on the faith of the contract; and it would be a gross fraud upon him to permit one, who has received the benefits of the agreement in silence, to escape from its burdens by proof that he did not know and did not inquire what these burdens were, when he assumed them."

Authorities without number might be cited to the same effect, and within the rule thus established we are convinced that there was no competent testimony of fraud or imposition in this case to go before a jury.

The judgment of the court below is therefore reversed, and the cause is remanded for a new trial.

GILBERT, Circuit Judge (dissenting). That the defendant was entitled to an instructed verdict in its favor is, to my mind, unsupported by the record. The plaintiff had in mind no claim for damages for the death of her son. The only request she made of the defendant was that it defray the funeral expenses. She testified that in response thereto the defendant's agent came and asked for the bills; that she gave him the bills; that he figured up the amount and said, "We will pay that;" that some three hours later he brought a paper for her to sign; that he did not tell her what was in it, nor tell her why she should sign it, but said, when he gave her the check, that he was paying for the funeral expenses. She testified: "When I signed the release, I relied and depended solely upon the statement given me by the man, and believed what he said."

The reply alleged that the plaintiff was sick, nervous, and distracted from worry on account of the death of her son, and was in no condition to read the paper which she signed, and there was evidence to show that she was at that time in an extremely nervous condition, could hardly speak, was trembling, and seemed to be about to collapse, and that only after several unsuccessful efforts was she able to hold a pen in her hand or subscribe her name. The defendant's agent testified that she "broke down and cried twice during the time when she attempted to sign the release," and that "during the time she was signing the paper she seemed to lose all control of herself."

Applicable to the situation thus presented is the decision in St. Louis, I. M. & S. Ry. Co. v. Phillips, 66 F. 35, 13 C. C. A. 315, where it was held that a peremptory instruction to the jury to return a verdict for the defendant was properly denied, in view of evidence that the plaintiff, at the time when she signed the release, was in a state of mind that rendered her incapable of transacting any important business, or forming or exercising a deliberate or intelligent judgment on any subject. Also Union Pacific Railway Co. v. Harris, 158 U. S. 326, 15 S. Ct. 843, 39 L. Ed. 1003, where the court held that the question whether the release was signed by the plaintiff in ignorance of its contents, at a time when he was under great suffering from his injuries and in a state approaching unconsciousness, caused by his injuries and by the use of morphine, was for the jury under proper instructions from the court.

Again, it is clear that the minds of the contracting parties never met on a settlement of the plaintiff's claim for damages. The defendant's agent denied the defendant's liability for damages, and said that all the plaintiff could get would be the funeral expenses, and he informed her that he was paying the funeral expenses. He thus gave her to understand that the paper which she signed was a receipt for the funeral expenses, and in fact the check which he gave her was for the amount of the sum total of those expenses. It is well settled that one who signs a receipt for a payment, which is represented to be in settlement of a specified claim, is not bound by a release therein contained of other claims or demands, notwithstanding that he fails to read the receipt. Gillespie v. Collier, 224 F. 298, 139 C. C. A. 534.

In Connors v. Richards, 230 Mass. 436, 119 N. E. 831, the plaintiff signed without reading a full release of claims for injuries on receipt of $5, which, it was represented to her, was for damage done to her muff. The court held that it was for the jury to say whether the plaintiff signed the writing, relying on misrepresentation that it was a receipt merely for the damage to her property,

and, if they so found, she was not bound by the release. In Washington R. & E. Co. v. McLean, 40 App. D. C. 465, it was held that the failure of a woman, unversed in business matters, to read before signing a general release of liability for personal injuries, relying upon the statement of an agent that it was a receipt for money paid her for injury to her apparel, will not, as a matter of law, be held to preclude her from maintaining an action for personal injury, and that an actual attempt to defraud, or an intentional misrepresentation, need not be shown. In New Bell Jellico Coal Co. v. Oxendine, 155 Ky. 840, 160 S. W. 737, the plaintiff signed a release and alleged that he was induced to sign it by the false representations of the defendant's agent that the instrument was a mere receipt for $200, which he was to receive by way of compensation in part for lost time, whereas the instrument was a release of claim for damages for personal injuries. The court held the release assailable for invalidity.

Among the cases in line with the foregoing are St. Louis, I. M. & S. Ry. Co. v. Reilly, 110 Ark. 182, 161 S. W. 1052, where the plaintiff signed a release purporting to be a settlement in full, on the representation of the agent that it was a settlement only of her claim for injuries to her baby and baby buggy; Railway v. Smith, 82 Ark. 105, 100 S. W. 884 where the release covered all of the plaintiff's claim on account of injuries, but he testified that the settlement was only of his claim for delay and inconvenience; Western Union Telegraph Co. v. Walck (Tex. Civ. App.) 161 S. W. 902, where the plaintiff signed a release of all damages for personal injuries as against a certain railroad company, and the agent failed to disclose that the instrument released another corporation also liable for the injuries; and Rocci v. Massachusetts Accident Co., 222 Mass. 336, 110 N. E. 972, Ann. Cas. 1918C, 529, where the court held that the representation that a paper is a receipt, when in truth it is a release, may be said to have been a material false representation.