# AMERICAN CASUALTY & LIFE CO. v. HALE.

## No. 4394.

Court of Civil Appeals of Texas. Beaumont.

Dec. 13, 1946.

Drew S. Davis, of San Augustine, and Chaney & Davenport, of Dallas, for appellant.

Ramsey & Ramsey, of San Augustine, for appellee.

WALKER, Justice.

Matt Hale brought this action in the County Court of San Augustine County against American Casualty and Life Company upon the insurance policy described below, insuring his wife, Ada Hale. He prayed recovery of $103, with interest, the cost paid by him of various items of care and treatment received by his wife while under treatment for illness in a hospital during December, 1944, as well as for 12% of that sum as penalty and for an attorneys' fee of $100. The cause was tried before

the Court without a jury, and on April 5, 1946, the trial court rendered judgment as prayed for in plaintiff's behalf.

The policy is before us, as an exhibit sent up with the record. The copy of the application attached thereto refers to it as a "whole life family group policy." It insures not only plaintiff's wife, Ada Hale, but also plaintiff and four (originally five) of his children, that is, each of six (originally seven) different people against death, against various accidental injuries, and against "loss due to Hospital residence" resulting from various matters, of which we need only specify illness. Plaintiff's suit is founded upon this indemnity against hospital expense. The provisions insuring against loss due to hospital residence list several items of hospital care and treatment within the coverage of the policy, and limit defendant's liability therefor to certain sums.

The policy is not dated. Under its provisions, it took effect at noon of the day on which the official premium receipt for the first premium "is properly dated and countersigned by a duly commissioned authority of the company." This receipt is not in evidence and the date when the policy took effect is not clearly shown. Plaintiff alleges in effect that the policy was issued on October 22, 1942, and that is the date of the application for the policy. Nevertheless, plaintiff testified that he "took out" this policy on October 22, 194. The instrument recites, however (under the heading "Name of Insureds") that insurance upon Bob Hale, plaintiff's son, was "cancelled March 20, 1943"; and it seems that plaintiff erred in his testimony and that this policy became effective on October 22, 1942. Neither of the briefs before us undertakes to state the date of this contract.

The policy was in force at all relevant times. It provides for a level premium of $3 per month, but various other provisions are such as would be expected in a policy issued by a mutual assessment association operating under Article 4859f and Article 5068—1, Vernon's Ann.Civ.St.

The trial court made no findings of fact. The testimony shows that plaintiff's wife was ill in December, 1944, and was placed in Hotel Dieu, a hospital in Beaumont, Texas, where she remained under treatment for 12 days. Included in the cost of her care and treatment were items of expense for which, with the hire of the ambulance conveying her to this place, defendant was liable under the indemnity against hospital expense; and this liability amounted to $103. Matt Hale paid this sum and demanded payment thereof from defendant. The only defense to his recovery of this item insisted on in this court is the release evidenced by the documents discussed below. We are not satisfied that the parties have correctly determined plaintiff's rights under the policy to this $103 bill, but the sufficiency of the evidence to support his recovery of this item, except as affected by the release, has not been made the subject matter of any Point of Error; and our discussion of his rights is necessarily limited to considering the effect of this release.

Plaintiff's wife died on January 29, 1945, and under the policy defendant insured her life for $200. Plaintiff, as beneficiary, made claim within thirty days after his wife's death for payment of this life insurance.

No action prior to March 7, 1945, by defendants respecting these claims of plaintiff (for $103 hospital expense and for $200 life insurance) was proven. On March 7, 1945, plaintiff and an agent of defendant's entered into a transaction whereunder that agent delivered defendant's draft for $190 to plaintiff, payable to plaintiff and his attorneys, and plaintiff delivered to the agent a formal release of his claim against defendant. Another such release, of the same effect, was on the back of the draft, operating upon the endorsement of that instrument; and on the same day plaintiff and his attorneys endorsed this draft and deposited it in the First National Bank of San Augustine.

The record reveals no explanation for defendant's paying less than the face amount of either of plaintiff's claims. Defendant alleged in general terms that a bona fide dispute existed between the parties respecting these claims, and the formal release of March 7, 1945, refers generally to a denial of liability by defendant; but

the source and nature of this dispute were not proved. One is left with an impression that the denial of liability was arbitrary.

The trial court's judgment in plaintiff's behalf represents fact findings in plaintiff's favor on all issues, and Matt Hale's version of his transaction with defendant's agent therefor constitutes the facts of that matter.

According to plaintiff, the releases did not represent his agreement with defendant, and defendant's agent procured a release of his claim for hospital expense by fraudulently misrepresenting to him the contents of the two documents he executed, namely, the formal release and the release on the draft, which plaintiff called a receipt. He testified that he settled nothing except his $200 claim for life insurance; that defendant's agent first offered him $160, and finally, $190, for this claim, and he agreed to accept $190 in payment of that claim; that defendant's agent "fixed up the papers and told me that the papers only covered the death claim and did not cover the claim for hospitalization. I told him that I was only settling for the death claim and not for both claims. When he told me that the papers only covered the death claim I had confidence in him, relied upon what he said, and believed that the papers only covered the death claim, and so believing, I signed the papers. If I had known that the papers covered the death claim and the hospital claim I would not have signed them. I am totally blind in one eye and my other eye is so weak that I can hardly read. I do not know anything about the terms and phrases in an insurance policy, and because of my lack of education and eyesight I could not and did not read the release and receipt that Mr. McDonald fixed up. At the time I signed the release and receipt the company owed me $200 for the death claim and $103 for the hospital bill. There was no misunderstanding or dispute about the $200 death claim."

Defendant's fraud effectively imposed upon plaintiff's attorney as well as plaintiff. Defendant's agent first called on said attorneys, one of whom directed him to plaintiff, to make such settlement of the claims as plaintiff would accept. Defendant's agent went in search of plaintiff, and he and plaintiff had the transaction previously described. He left the draft with plaintiff, and then returned to plaintiff's attorney who wrote his signature upon the foot of the formal release as an accommodation to said agent, without reading the document, and that same day plaintiff presented the draft to him, which he was required to endorse as a payee. There was nothing upon the draft or in the facts previously brought to his attention to suggest that the release on the back of the draft did not represent the actual agreement between plaintiff and defendant's agent, or to require any action of him other than the endorsement his client desired. Consequently, his familiarity with the terms of the draft and the release thereon would not affect plaintiff's rights on this appeal. Under this record, the attorney's relation to the transaction was collateral and plaintiff's rights depend upon his own understanding; and since plaintiff testified that he executed the "papers" believing that he was discharging only his $200 claim for life insurance, and since the trial court's judgment implies that all facts were found in plaintiff's favor, we must take it to be a fact that plaintiff endorsed this draft under the same mistake whereunder he executed the formal release; and that it was not until some later time, a time not shown, that he discovered the fraud practiced upon him. This fact, of course, necessarily misled his attorney and controlled his attorney's action.

Defendant propounds six Points of Error for reversal.

Under Point 1, defendant assigns error to the judgment in plaintiff's behalf for penalty and attorneys' fees. Defendant says that the evidence shows defendant to be governed by Article 4859f and Article 5068—1 instead of by the general insurance laws governing companies writing policies like that issued to plaintiff; and that insurers governed by those two statutes are not liable for such items.

The evidence to which defendant refers consists of the policy and application therefor, and a certificate of authority to defendant from the Board of Insurance Commissioners, dated July 27, 1942, expiring Feb-

ruary 28, 1943, to operate under Articles 4859f and 5068—1.

Plaintiff says that liability for penalty and attorneys' fees depends upon the statutes under which defendant was operating in December, 1944, when the hospital bill of plaintiff's wife was incurred; that the proof does not show what sort of business defendant was conducting and what statutes governed defendant at that time; and that the general insurance laws must accordingly be applied to defendant, including Article 4736, establishing a liability for such items.

Point 1 is sustained.

Article 4859f, amended since, was enacted in 1933, and Article 5068—1, in 1939. According to section 1 of Article 4859f, that statute applied to mutual assessment corporations organized under repealed or amended statutes, operating and actually carrying on in this state immediately prior to January 1, 1933, a state wide mutual life insurance business. Companies governed by Article 4859f and desiring to operate thereunder were required by Section 2 of the statute to apply to the Board of Insurance Commissioners for a certificate of authority to do business under said Act, and to provide the Board with information, including copies of the Company's charter and By-Laws, wherefrom the Board could determine whether the Act applied to the applicant and whether the certificate ought to be granted. Under section 3, the Board were required to issue a certificate of authority to the applicant, upon their being satisfied with the applicant's proof of right thereto; and it is elsewhere provided in this statute that the authority so conferred shall be annually renewed, upon proper proof by the certificate holder.

The only penalty provided by this statute for doing business without a certificate of authority is action against the company by State authorities.

Sections 14 and 19 of Art. 4859f are of direct significance on this appeal. Section 14 provides for the repeal of charters granted companies governed by the Act, which had not procured authority to do business under that Act, and other significant provisions of Section 14 are quoted below; but Section 19 provides that: "Except as herein expressly provided, no insurance law of this State shall apply to any corporation operating under this Act, and no law hereafter enacted shall apply to them unless they be expressly designated therein."

Under this quotation from Section 19, there being no provision in Article 4859f charging liability upon defendant for penalty and attorneys' fees, nor any such provision in any other statute we have found applicable to associations governed by Article 4859f, the defendant was not liable for those elements of plaintiff's recovery if the proof showed that defendant was governed by Article 4859f. General Life Ins. Co. v. Potter, Tex.Civ.App., 124 S.W. 2d 409. The provisions of Article 5068—1, which are specifically applicable to various insurers governed by Article 4859f, do not affect the questions now before us.

The proof makes out a prima facie case that defendant was governed by Article 4859f, and since plaintiff did not attempt to rebut it, this case stands.

The certificate of authority from the Board of Insurance Commissioners to defendant, dated July 27, 1942, recites that defendant "has, according to sworn statement, complied with all requirements of law applicable thereto and is hereby authorized to pursue the business of Life, Health and Accident insurance within this State for year ending February 28, 1943, in accordance with the provisions of Articles 4859f and 5068—1, R. C. S. of Texas".

This certificate was admissible in evidence under Article 4695 and Article 4682a. See National Guaranty Fire Ins. Co. v. King, Tex.Civ.App., 24 S.W.2d 501. Since it came from the agency charged by Article 4859f with the duty to determine whether defendant was governed by, and was entitled to do business under, that statute, this certificate made a prima facie case in defendant's favor that when issued, the defendant was in existence and constituted an association which was then governed by and was then entitled to do business in Texas under Article 4859f.

This fact, however, proved the kind of corporation defendant had become and identified the statutes under which it was,

in some sense of the word, incorporated. It is provided in Section 14 of Article 4859f that "the charter of each corporation in this State entitled to comply with the terms of this Act which does not make application to do so within six (6) months after the Act shall go into effect is hereby expressly repealed and revoked, and such corporation is hereafter forever prohibited from carrying on its business in this State"; and it was provided further in that Section that "the charters of all corporations complying with this Act are expressly continued in force during the terms of said charters subject to the provisions hereof."

The continued existence of defendant at all relevant times from the date of the certificate, July 27, 1942, onwards, is undisputed, and is, indeed, a necessary inference from the record as a whole, pleading and proof. The burden, then, shifted to plaintiff to show that defendant was governed by some other statute at whatever time liability for penalty and attorneys' fee might accrue. International Travellers' Ass'n v. Bettis, Tex.Civ.App., 52 S.W.2d 1059, at page 1061, where the court said: "And, appellant having shown that it was incorporated under said chapter 6, exempting it from the terms of article 4736, (the statute on which Matt Hale relies) the burden was upon appellee to show that it was subject to the provisions of the penalty statute." Doubtless the defendant could change the character of its insurance business (see, for example, Art. 5068—3, enacted in 1943); but whatever change would be sufficient to take it out from under Article 4859f would be something like an amendment of defendant's charter, and thus a change in the corporate character of defendant. Under the language quoted from Section 14 and Section 19, we think, that from proof showing that a corporation in existence had complied with the provisions of Article 4859f, it must be inferred, or rather presumed, that said corporation continued to operate under the same charter, that is, that said corporation remained the same kind of a corporation it became upon complying with Article 4859f, until proof appears in the record showing a change in the corporate functions of said company.

As previously stated, plaintiff did not rebut this prima facie case. The policy contains various provisions which one would expect to find in a policy issued by a company operating under Article 4859f and Article 5068—1, and the only circumstance in the record which might be construed as militating against our conclusions is defendant's failure to produce a certificate of authority for doing business after February 28, 1943, when the certificate in evidence expired. If defendant had such authority, that certificate could have been produced. However, this is an ambiguous circumstance. The certificate proven by defendant covered the date of the policy as plaintiff alleged that date, and this suggests that defendant may have thought liability for penalty and attorneys' fee was governed by defendant's status at the time the contract of insurance was made. We think this circumstance should be given no effect beyond an implication that defendant may have done business after February 28, 1943, without having secured a renewal of authority to do business, but such conduct would not bring defendant under the operation of Article 4736 or take defendant out of the operation of Article 4859f. The only penalty provided by Article 4859f for doing business without authority is action by State agencies against the corporation. Liability for penalty and attorneys' fees is not involved. See: Houston Life Ins. Co. v. Dabbs, 132 Tex. 566, 125 S.W.2d 1041; International Travellers' Ins. Ass'n v. Bettis, Tex.Civ.App., 52 S.W.2d 1059. We note that under Article 5068—1, Section 14, it is provided that: "The Board shall cancel the certificate of authority of any association found to be operating fraudulently or improperly contesting its claims."

We have referred to an ambiguity on the record respecting the date when the policy took effect. Under the conclusions stated, that date is immaterial. Plaintiff alleged October 22, 1942, and testified to October 22, 1944; either date is subsequent to the date of the certificate of authority.

Defendant's Points 2 and 3 attack the judgment for penalty and attorneys' fee, and have become immaterial under our disposition of Point 1.

Under Points 4, 5 and 6, defendant assigns error to the judgment on various grounds involving the release hereinbefore referred to.

Defendant plead both releases in bar of plaintiff's suit, and by supplemental petition plaintiff alleged in avoidance the facts to which he testified as set out above. It appears from plaintiff's petition that he is a negro. Plaintiff prayed "that said receipt and release be cancelled and rescinded," and for general relief.

Points 4 and 5 are based on plaintiff's failure to return any part of the $190 paid him by defendant, as a prerequisite to rescission, and his failure to bring the claim for life insurance into this suit. Defendant says that the consideration for the releases was entire, and was not apportioned between the plaintiff's claims; that the trial court could not apportion it in this suit—on only one of those claims; and that the trial court in disregarding plaintiff's failure to return the consideration, by judgment in plaintiff's favor, not only failed to restore the parties to the status quo ante but enabled the plaintiff to secure double payment from defendant.

Under Point 6, defendant makes the familiar argument that plaintiff and plaintiff's attorney were negligent in failing to read the release and that their negligence bars any equitable relief in plaintiff's favor.

Points 4, 5 and 6 are overruled.

■ Defendant's argument under Points 4 and 5 simply ignores the plaintiff's version of the settlement transaction, which under the trial court's judgment represents the facts of that transaction. No consideration was paid by defendant for the release of plaintiff's hospital claim, and plaintiff did not agree to release it. Consequently there was nothing to return to defendant, and plaintiff's failure to return the $190 and to bring his life insurance claim into this suit represents only his willingness to, and his desire to have defendant also abide by the contract the parties actually made.

■ It may be that the plaintiff should have prayed for reformation instead of for a cancellation of the release, but the sup-plemental petition, construed as a whole, showed the nature of the plaintiff's rights and the equitable relief he was entitled to; and under the prayer for recovery on the policy and for general relief, the trial court, having jurisdiction in equity as well as at law, could determine what settlement agreement the parties did make, and having done so, could then render whatever judgment on the policy was consistent with the actual settlement without undertaking to reform the releases. Ætna Ins. Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057; Fitch v. Lomax, Tex.Com.App., 16 S.W.2d 530, 66 A.L.R. 758; Baker v. Liverpool & London & Globe Ins. Co., Tex.Civ.App., 275 S.W. 316, and see: Western Union Tel. Co. v. Walck, Tex.Civ.App., 161 S.W. 902; Texas & N. O. R. Co. v. Goodwin, Tex.Civ.App., 40 S.W.2d 182.

■ Under the circumstances related by the plaintiff and the general fact finding in his favor to be implied from the trial court's judgment, plaintiff was not negligent in relying upon the defendant's agent's statement to him of the contents of the releases, and his failure to read the releases will not bar his recovery. Conn v. Hagen, 93 Tex. 334, 55 S.W. 323; Western Union Tel. Co. v. Walck, Tex.Civ.App., 161 S.W. 902; Texas & N. O. R. Co. v. Goodwin, Tex. Civ.App., 40 S.W.2d 182. That plaintiff had an attorney is without significance on this issue because, as heretofore shown, defendant's fraud imposed on the attorney as well as on plaintiff.

■ This disposes of all Points of error before us. Defendant has incorporated seven assignments of error in the brief, to which the Points of Error are referred; but defendant has briefed nothing except the matters referred to in the Points of Error and we assume that anything else which may be included in the subject matter of the assignments has been abandoned.

The judgment in plaintiff's behalf for penalty of $12.36 and for an attorneys' fee of $100 is reversed and judgment is here rendered in defendant's behalf, denying plaintiff recovery of those items. Otherwise the judgment is affirmed.