BLALOCK v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. June 15, 1896.)

No. 494.

1. JURISDICTION—LAW AND EQUITY.

The test of jurisdiction, in an action at law, is whether, on the facts shown, the plaintiff is entitled to any relief which a court of law is competent to give; and a party cannot be turned out of a court of law because he has a complete and adequate, or even a better, remedy in equity.

2. SAME—PLEADING.

Plaintiff brought an action in a state court possessing only common-law jurisdiction, setting forth in his petition facts constituting fraud and deceit in obtaining the surrender and cancellation of a life insurance policy for an inadequate consideration, and thereupon demanded both legal and equitable relief. The defendant demurred to the petition, and removed the cause to the United States circuit court, docketing it on the law side of that court. *Held,* that it was error to dismiss the petition, because it stated facts warranting, and prayed for, equitable relief, but that such allegations and prayer should have been treated as surplusage, and the court should have proceeded with the case as a pure action at law. Blalock v. Assurance Soc., 73 Fed. 655, reversed.

In Error to the Circuit Court of the United States for the Northern District of Georgia. Reversed without opinion.

Chas. Z. Blalock and John Hopkins, for plaintiff in error.

Alex. C. King and Jack J. Spalding, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge (concurring). John T. Blalock, as administrator of C. W. Blalock, deceased, sued the Equitable Life Assurance Society in the city court of Atlanta, Ga. The petition filed contained seventeen paragraphs, claiming as follows:

"(1) That the defendant company was indebted to petitioner in the principal sum of $2,500, besides interest, the same being a balance due upon a policy of insurance issued by said defendant company upon the life of W. B. Blalock, a copy of which is hereto attached.

"(2) The policy was issued June 22, 1892, for $5,000, payable to C. W. Blalock, brother of W. B. Blalock, upon the death of said W. B. Blalock.

"(3) C. W. Blalock died 30th of January, 1894. W. B. Blalock died 5th of March, 1894. Petitioner was appointed administrator of C. W. Blalock 6th of September, 1894.

"(4) Petitioner, as such administrator, demanded payment of the amount due on said policy.

"(5) Payment was refused.

"(6) Proofs of loss were made, but defendant refused to consider same, or pay the claim.

"(7) Said policy was in possession of C. W. Blalock until 27th of January, 1894, and was a legal and binding obligation of defendant.

"(8) On the 25th of January, 1894, while C. W. Blalock lay fatally sick at petitioner's home, a Dr. A. S. Hawes, defendant's agent, came there, and began, by artful means, deceitful practices, and fraudulent representations, a preconceived scheme to procure a cancellation of said policy. Said named Blalocks were in a weak and debilitated condition, unable to properly attend to business, almost at death's door. Petitioner, who was present, so informed said Hawes, and protested against any interview being had with the said Blalocks. Petitioner was present, and, when he learned the purpose of Hawes' visit, insisted that said Blalocks were too near death's door to discuss any business matter. Hawes persisted, and falsely informed said Blalocks that said policy was void, and represented that defendant company had evidence of fraud in the procurement of said policy, vitiating the same, preventing a recovery, and showing its procurement by false representation. Hawes, when called on to specify said charges, refused to give the grounds for demanding cancellation of said policy, but said he was advised the company held proof to avoid the policy. He offered to return the premium paid, next offered $1,000, and then $1,750, in settlement of said policy.

"(9) Said Blalocks, notwithstanding the false statements and ingenious arguments of Hawes, urged with great persistency, insisted they had done no wrong, that there was no fraud, and refused to compromise and settle said policy. Hawes then left.

"(10) Three days thereafter, he returned with one J. A. Morris, defendant's agent. The above charges were renewed by Hawes and Morris with great energy. They represented that the defendant had evidence vitiating said policy; that it would contest the same, and show that it was obtained by false representations; that the company was not liable for said reasons; that suit on the policy would have to be brought in Florida. Defendant could establish fraud by witnesses, and would carry the case from court to court to the United States supreme court. Insured, being dead, could not be present to meet evidence of fraud, there could be no recovery, and the beneficiary would be put to great expense and trouble, and get nothing in the end.

"(11) After long and tedious argument, said Blalocks in their weak condition overreached; and, while most positively denying any fraud, yet being unduly excited, and desiring to avoid litigation, and fearing false testimony reflecting on the honor of the assured would be produced after death, accepted $2,500 from said agents, and signed an agreement to surrender said policy.

"(12) Two days thereafter (January 30, 1894) C. W. Blalock died. Soon thereafter (March 5, 1894) W. B. Blalock died.

"(13) In pursuance of said payment, and by false and fraudulent representations, defendant obtained possession of said policy.

"(14) Said cancellation was obtained by fraud, the representations made to induce the same were false, and were made to obtain an unconscionable advantage of the said Blalocks in their last dying struggles.

"(15) Defendant's refusal to pay the balance due on said policy was in bad faith, by reason whereof it is liable, in addition to said balance, to a penalty of 25 per cent. on said balance, also reasonable attorney's fees, to wit, $500, for which petitioner expressly sues.

"(16) By the fraudulent action of defendant in procuring the cancellation and possession of said policy, petitioner has been damaged twenty-five hundred dollars, besides interest, to which amount is to be added 25 per cent. penalty, and reasonable attorney's fees.

"(17) Petitioner prays as follows: For judgment for said sum of $2,500 and attorney's fees and damages. That said policy be brought into court and delivered up, and the agreement thereon canceling it shall be canceled, and that judgment be rendered for the balance due thereon, after crediting the $2,500 paid. Petitioner offers to account for the $2,500 already paid by entering such credit."

The defendant demurred to said petition upon the following grounds:

"(1) That the said petition, under the allegations therein contained, discloses no cause of action against the defendant.

"(2) That the said petition shows that the said cause of action was compromised and settled at and for the sum of twenty-five hundred dollars, and the said policy sued on surrendered; and said plaintiff does not aver that prior to the bringing of said action it tendered said sum of twenty-five hundred dollars back to the said defendant, and offered to cancel said settlement, and that said defendant refused to do the same, and this demurrant says that said plaintiff cannot maintain said action without first tendering back and offering to cancel said agreement of compromise set forth in said petition.

"(3) Because the said plaintiff in said action seeks to invoke the jurisdiction in equity to account for said twenty-five hundred dollars, and to cancel said agreement of compromise, which same is essentially necessary in any action upon said policies. That the city court is a court of common-law jurisdiction alone, and cannot maintain jurisdiction of said matter of equitable cognizance."

At the same time, without waiving this demurrer, it answered, denying the charges of the petition, and alleging that the policy was fairly, lawfully, and fully settled by the payment of $2,500, which was accepted, and an agreement surrendering the same made, and the said policy surrendered.

After demurrer and answer, the defendant removed the case to the United States circuit court of the Northern district of Georgia, and docketed the same on the law side of that court. The demurrer was heard in the circuit court, and sustained, on November 6, 1895, upon the ground that the relief sought in the case was relief in equity, and that the city court of Atlanta had no jurisdiction to grant such relief, nor could the United States circuit court except on bill in equity. Plaintiff offered to amend, but the amendment

was, on February 7, 1896, rejected and refused, as changing a suit sounding in contract to one in tort, and changing a suit in equity to one at law. The petition was therefore, on February 11, 1896, finally dismissed. Plaintiff prosecutes his writ of error to this court to review said rulings.

It does not appear that the plaintiff asked to have his cause placed on the equity docket, with leave to replead, if necessary. Perhaps, as the action was originally instituted in a court having jurisdiction only in actions at law, it was considered that the plaintiff would have no right to proceed with the same as an equity cause on removal to the circuit court. It may be that the plaintiff did not desire to prosecute his case in equity, fearing that rules involving hardship, such as the restitution of the moneys received, would be invoked against him. It may be, too, that as the plaintiff desired to recover only ,damages, he preferred to submit the facts of his case to a jury, rather than to a chancellor. As presented to this court, the case shows a petition setting forth facts constituting fraud and deceit in obtaining the surrender and suppression of a life insurance policy for an inadequate consideration, and for which the plaintiff asks, at the hands of a court of law, both equitable and legal relief. The circuit court has dismissed the petition, because it states facts warranting, and prays for, equitable relief. The question, then, is whether, in a case brought in a court of law, and the plaintiff asks for equitable, as well as legal, relief, the case should be dismissed because there is a more complete and adequate remedy in equity than at law.

It is well settled in the courts of the United States that no case can be prosecuted in equity where the plaintiff has a complete and adequate remedy at law, and this has been decided to be on account of that provision in the constitution of the United States which guaranties a trial by jury in common-law actions involving over $20. So far as we are advised, it has never been decided by the supreme court of the United States that a party can be turned out of a court of law because he has a complete and adequate remedy, or even a better remedy, in equity. See Swayze v. Burke, 12 Pet. 13; Gregg v. Sayre, 8 Pet. 244. The test of jurisdiction in an action at law is whether, on the facts shown, the plaintiff is entitled to any relief which a court of law is competent to give.

Viewing the petition in this case as setting forth sufficient facts to warrant an action at law for fraud and deceit, and as the plaintiff prays for relief, to wit, a judgment for damages, which it is entirely competent for a court of law to administer, we are of opinion that the court below erred in not treating the allegations in the petition bearing upon equitable relief only, and the prayer for equitable relief, as surplusage, and in refusing to proceed with the case as a pure and simple action at law. Bank v. Donnally, 8 Pet. 361.

In the errors assigned, complaint is made of the refusal of the trial court to permit amendments to the petition. The amendments asked consisted wholly in striking out those specific allegations which tended only to show plaintiff's equities, and so much of the prayer as asked for relief that only a court of equity could give.

They were refused, on the ground that plaintiff could not by amendment convert a suit in equity into an action at law. As the plaintiff brought his action at law, and did not, even by intendment, sue in equity, and contended throughout that he was properly on the law side of the court, and that his petition warranted relief at law, we should have no trouble in passing upon these assignments of error if we had jurisdiction. Amendments to the pleadings in actions at law are within the discretion of the court below, and error will not lie on the granting or refusal thereof. Chirac v. Reinicker, 11 Wheat. 280; Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426.

Other questions raised in the case do not appear to have been considered in the court below, and upon them we express no opinion.

The judgment of the circuit court should be reversed, and the case remanded, with instructions to reinstate the case, and proceed therein as an action at law.