[Civ. No. 579.   First Appellate District.—August 24, 1911.]

## RIALTO CONSTRUCTION COMPANY, a Corporation, Appellant and Respondent, v. CHARLES WESLEY REED, Respondent and Appellant.

CONTRACT FOR RAILROAD CONSTRUCTION—PROVISION FOR CONCLUSIVE ESTIMATE OF CHIEF ENGINEER—AVERMENT AND PROOF OF FRAUD OR GROSS MISTAKE REQUIRED.—A provision in a contract for railroad construction that the chief engineer of the railroad is empowered to decide finally and conclusively as to the classification and quantity of materials moved is binding on the parties thereto, in the absence of an averment and proof of fraud or such gross mistake as to imply fraud.

ID.—COUNTERCLAIM OF DEFENDANT—AVERMENT OF GROSS MISTAKE—EVIDENCE—SUPPORT OF IMPLIED FINDING OF JURY—BAD FAITH.—Where the counterclaim of the defendant appropriately raised the question of gross mistake in the estimate of the chief engineer, it is held that the evidence is sufficient to sustain the implied finding of the jury that his certified estimate was palpably inaccurate, and showed such a negligent or careless mistake as to indicate bad faith, and that such finding cannot be disturbed.

ID.—INSTRUCTIONS READ TOGETHER — APPARENT CONFLICT BETWEEN ISOLATED PARTS.—Although an instruction, standing alone, does not correctly state the law as to the estimate of the engineer, yet all the instructions on that subject must be read together, and if when so read, it appears that the jury was correctly instructed on that subject, the judgment cannot be reversed, because there is an apparent conflict between isolated parts thereof.

ID.—RELIANCE BY PLAINTIFF ON DEFENDANT'S BOOKKEEPER FOR SUPPLIES FURNISHED—DIRECTION OF DEFENDANT.—Where the plaintiff depended upon the action of defendant's bookkeeper in approving all bills furnished by plaintiff for supplies, as directed by defend-

ant, and having received that approval had acted upon it, without other evidence of the cost price or reasonable value of the supplies, the defendant cannot, in justice, be heard to complain on appeal that the bookkeeper could not bind him by approval of bills incurred prior to his employment.

ID.—UNTENABLE OBJECTION TO ACTION — FAILURE OF PLAINTIFF TO COUNTERCLAIM IN PRIOR ACTION BY DEFENDANT—LEAVE TO COUNTERCLAIM.—Where after this case had been on trial for about ten days, and the case was about to go to the jury, the defendant set up for the first time the plea that the plaintiff, by failure to file a counterclaim, in a prior action by defendant, could not maintain this action, whereupon plaintiff obtained leave to file a counterclaim therein, the court properly refused to admit the prior record in evidence. The plea of the prior action was untenable, and the contention of the defendant was too technical to be seriously considered.

ID.—CESSATION OF WORK AS RESULT OF EARTHQUAKE—FINAL ESTIMATE —TIME IMMATERIAL.—Although the contract did not contemplate that progressive estimates during the progress of the work should be accurate, the parties clearly intended that when the work was finished or the contract canceled, a final and correct estimate of all the work done was required, upon which full settlement should be made; and where the work ceased as the result of the earthquake of 1906, and shortly thereafter, and in anticipation of cancellation, a final estimate was made, it is immaterial whether the estimate was just before or after such cancellation.

ID.—ESTIMATES OF CHIEF ENGINEER NOT REQUIRED TO BE PERSONAL—SUPERVISION OF ASSISTANTS SUFFICIENT.—The estimates of the chief engineer are not required to be personal. It is sufficient that he exercises a supervision over the work of his assistants. An estimate by an assistant engineer may be sufficient.

CROSS–APPEALS from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Knight, and Page, McCutchen, Knight & Olney, for Rialto Construction Company, Appellant and Respondent.

Charles Wesley Reed, Respondent and Appellant *in pro. per.*

KERRIGAN, J.—In this case there are two appeals, both from the judgment, one being taken by plaintiff, and the other by the defendant.

A brief outline of the facts of the case is as follows: On September 20, 1905, C. E. Loss entered into a contract with the Ocean Shore Railway Company to perform all the grading work, track-laying and surfacing for the company's double track railroad from its initial point in San Francisco to Scott Creek in Santa Cruz county, being a distance of about sixty-seven miles. The contract, among other things, contained a classification of the materials to be worked, said materials being classified as earth, loose rock, solid rock, etc. On October 2, 1905, C. E. Loss sublet certain parts of the work, constituting what were known as sections 4 and 5 thereof, to Mahoney Bros. and Malley, copartners, the predecessors and assignors of plaintiff. In January, 1906, Mahoney Bros. and Malley, on the one part, and the defendant on the other, confirmed in writing a previous oral agreement between them, whereby the defendant was to perform that portion of the work known as section 4. Prior to February 27, 1906, Mahoney Bros. and Malley had transferred to plaintiff all their interest in the contract of October 2, 1905, and on that day plaintiff and defendant entered into a contract whereby the defendant was to perform the work on section 4. This contract, which took the place of the one between defendant and Mahoney Bros. and Malley, is the one by which the rights of the parties hereto are to be determined.

It provided in part as follows: "The said Rialto Construction Co. agrees to furnish the said Reed, or his order, with the necessary hay and grain for the said stock, and supplies for the men engaged upon the work, at cost price, and also agrees to pay weekly the time checks issued to his employees by the said Reed for work performed upon section 4, in accordance with the contract. . . . It is understood that all money earned by said Reed shall be first applied to the payment of said time checks, and the said supplies and the said hay and grain, and all other bills incurred by said Reed in the prosecution of this work, before any of it shall be used by said Reed for any other purpose. The said Reed is to be

paid for the performance of said work as follows: earth, 18c per cubic yard; loose rock, 28c per cubic yard; solid rock, 50c per cubic yard.''

Each of the contracts mentioned provided that the estimate of the engineer of the Ocean Shore Railway Company, both as to classification and quantity of materials moved, as also the construction placed by said engineer upon the contract and specifications, were to be final and conclusive, and binding upon the parties.

Under the contract between the parties hereto of February 27th defendant performed certain excavating and grading work upon said section 4, and was engaged in the performance of this work at the time of the earthquake occurring in San Francisco and vicinity in April, 1906, at which time operations were suspended by direction of the railway company, and have not been resumed by the defendant. In the following month the chief engineer prepared a classification and final estimate of the work done by defendant.

Plaintiff alleges that it disbursed under the contract for the account of the defendant the sum of $21,965.10, upon which it has been reimbursed $15,622.78, leaving a balance of $6,342.32, which is the amount sued for by plaintiff.

To the complaint defendant interposed a counterclaim for $9,906.57, based upon an alleged erroneous classification by the chief engineer of the work involved. The case was tried with a jury, which rendered the following verdict: ''We, the jury in the above-entitled cause, find a verdict in favor of the plaintiff in the sum of $6,842.32. We further find for the defendant $4,500 because of erroneous classification.''

In accordance with the verdict a judgment was duly entered. From that part thereof awarding plaintiff the sum of $6,842.32 the defendant has appealed; and from the part awarding $4,500 to the defendant the plaintiff has appealed. The two appeals will be considered together.

The contract sued on provides that the chief engineer of the railway company is empowered to decide, and his decision is made final and conclusive, as to the classification and quantity of materials moved, and plaintiff is correct in stating that this provision of the contract is binding on the parties thereto in the absence of an averment and proof of fraud or such gross mistake as to imply fraud. (*Cook* v.

*Foley,* 152 Fed. 41, [81 C. C. A. 237]; *Martinsburg etc. R. R. Co.* v. *March,* 114 U. S. 549, [5 Sup. Ct. Rep. 1035, 29 L. Ed. 255]; *Chicago etc. R. Co.* v. *Price,* 138 U. S. 185, [11 Sup. Ct. Rep. 290, 34 L. Ed. 917]; *Memphis Trust Co.* v. *Brown-Ketchum Iron Works,* 166 Fed. 398, [93 C. C. A. 162].)   But contrary to plaintiff's contention there is in this case an allegation in the counterclaim appropriate in all respects to raise the question of gross mistake; and we also think without hesitation, after having carefully read all the testimony in the case, consisting of over five hundred pages, that the evidence is sufficient to sustain the implied finding of the jury that the estimate certified by the chief engineer of the railway company was palpably inaccurate.   It would be tedious and not worth while to review or even summarize the evidence.   The jury, believing, as they evidently did, the testimony introduced by the defendant on the subject, it was for them to say whether the erroneous estimate made by the chief engineer was as to such classification a mere error of figures, or in judgment, or such a negligent or careless mistake as to indicate bad faith.   They adopted the latter view, and under the circumstances of the case we cannot disturb their finding.

The court, at one place in its charge, instructed the jury: "That the engineer's estimates are not conclusive upon the defendant; but defendant is entitled to be paid the prices called for in his contract for the work which he performed under the contract."

It may be conceded that this instruction standing alone does not correctly state the law applicable to the facts of the case; but immediately following that instruction the court said: "I further charge you that before you can set aside the certificate of the chief engineer of the Ocean Shore Railway Company, which, by the terms of the contract between the parties, was made final as to yardage and classification, you are entitled to have submitted to you clear and convincing evidence to overcome the presumption that the certificate correctly stated the facts in that respect.   Mere difference in the classification reached by the Ocean Shore engineer and that claimed by the defendant does not justify you in setting aside such certificate.   The difference must be so large, the disregard of the defendant's rights must be so

17 Cal. App.—3

palpable and gross, as to lead the mind but to one conclusion, and that is, that fraud has been practiced upon him.''

It is sufficient answer to plaintiff's contention to say that when these two instructions are read together—as they are required to be—it does not appear that they were misleading or confusing, but, on the contrary, it is clear that they gave the jury ''a fair and just notion of the law upon the point discussed.'' As just indicated, the charge to the jury must be read as a whole, and if when so read it appears that the jury was correctly instructed, the judgment will not be reversed because there is an apparent conflict between isolated parts thereof. (*Stephenson* v. *Southern Pacific Co.*, 102 Cal. 143, [34 Pac. 618, 36 Pac. 407].)

This disposes of plaintiff's contentions. We therefore pass to a consideration of the defendant's appeal.

The plaintiff, depending upon the action of defendant's bookkeeper, who approved all of the bills for supplies furnished to the defendant, introduced no evidence of the cost price nor of the reasonable value of such articles. The bookkeeper, however, was not employed by the defendant until March, 1906; and therefore defendant insists that said bookkeeper was without authority to bind him for any goods furnished prior to that date, by his approval of the bills therefor.

There is no merit in this position, for when these bills were presented to the defendant for his inspection and approval, he informed plaintiff that he did not personally know if they were correct, and directed that they should be sent to his bookkeeper ''to be O. K.'d.'' This was done; and the bookkeeper testified that his approval of these bills was based as to some of the articles on his own knowledge, and as to others upon an investigation made by him. The plaintiff in good faith paid these bills for the defendant, and having submitted them to the defendant's bookkeeper for approval, as directed by the defendant, and having received that approval and acted upon it, the defendant cannot now in justice be heard to complain.

At a period prior to the commencement of this action Charles Wesley Reed brought an action against the Rialto Construction Company et al., to the complaint in which action the construction company filed an answer, but set

up no counterclaim. Subsequently the construction company commenced this action, and Reed in due time answered and filed his counterclaim, covering identically the same matters and things which formed the basis of the action commenced by him. After the present case had been on trial for about eight days, and just before it was expected to go to the jury, Charles Wesley Reed made for the first time, by way of an amended answer as well as a requested instruction to the jury, the objection that the plaintiff, having failed to file a counterclaim in the first case, it could not maintain the present action. It seems that immediately after this objection was made the plaintiff here filed an amended answer in the case of *Reed* v. *Rialto Construction Company,* setting up its counterclaim, and requested permission to introduce in this case the record in that action showing such fact; but the court, feeling doubtless that Reed's point was without merit, sustained an objection to the proposed evidence, and refused to instruct the jury to render a verdict in favor of defendant, as requested by him.

The case was before a jury; ten days had been consumed in its trial, the issues would have been the same no matter which case was tried first, and, passing the point that Reed waived the objection now urged by not making it earlier, we think that his contention depends upon an argument too technical to be seriously considered.

A provision of the contract between the Ocean Shore Railway Company and C. E. Loss which was carried into the contract between the parties to this action provided, ''That the Company may at any time reduce the contractor's force, or suspend the work or any part thereof for any length of time, or may discontinue the entire work or cancel this contract without liability for damages to the contractor, provided that in case of such cancellation a full and final estimate of the work done shall be prepared and payment made to the contractor in full thereof at contract prices, less all proper deductions,'' etc. This final estimate, it appears, was made after a suspension of the work but before the cancellation of the contract. It also appears that the measurements of the work done were made up by an assistant of the chief engineer, who was detailed upon the particular section of the work undertaken by the defendant, his figures

being checked up in the engineer's office, and upon the data thus furnished the chief engineer made the final estimate. Defendant contends that the admission in evidence of the so-called final estimate was error, because (1) the estimate was made before a cancellation of the contract; and (2) because the estimate was not made by the chief engineer personally.

(1) It was not contemplated by the contract that the progressive estimates of the work as it proceeded, made for the purpose of paying installments on the contract, should be accurate; but, on the other hand, it was intended by the parties to the contract that when the work was finished or the contract canceled there should then be a final and correct estimate of all the work done, upon which full settlement should be made. After the earthquake operations were suspended, and shortly thereafter, without resumption of work and in anticipation of the cancellation of the contract, the final estimate was made. Under these circumstances we wholly fail to see what difference it could possibly make to the defendant whether the estimate was made just before or after such cancellation. This objection is purely technical, and may be disregarded.

(2) The law does not contemplate in a case like this that the chief engineer shall in person make the estimates, for, on account of the extent of the work, such a course would be impracticable. It is sufficient if he exercises, as was done in this case, a general supervision over them. A case in point from which we here quote at length is *Sweet* v. *Morrison,* 116 N. Y. 19, [15 Am. St. Rep. 376, 22 N. E. 276]: ''Considering the extent of the railroad, the time provided for its completion, the details and complications in the measurements, and the nature of the duties of the chief engineer as implied from his position, even if it would be possible for him to give the requisite personal attention, it would be unreasonable to expect it. As said by the court in the Herrick case (*Herrick* v. *Vermont C. Ry. Co.,* 27 Vt. 673): 'When we come to know that practically the chief engineer never does and never can make these estimates, or even verify those made by others, that the thing is altogether impracticable, we must conclude that the parties had reference to something which was usual, or at least possible, in such

cases.' It was accordingly held that an estimate by the assistant engineer was sufficient in that case. . . . The position of chief engineer made him conversant with the general facts, and gave him a thorough knowledge of the engineers under his control. He was in a position to exercise his judgment upon the reliability of their reports, and could direct others to revise their measurements if he deemed it necessary. The same means that he employed to protect the railroad in its payments to the defendants were apparently regarded as sufficient to protect the parties as between each other." See, also, the following authorities to the same effect: *Palmer* v. *Clark*, 106 Mass. 373, 388; *Edwards* v. *Hartshorn*, 72 Kan. 19, [82 Pac. 520, 1 L. R. A., N. S., 1050] ; *Nelson Bennett Co.* v. *Twin Falls L. & W. Co.*, 14 Idaho, 5, [93 Pac. 789, 797].

The judgment, which follows the verdict, is for $500 more than the plaintiff anywhere in the record demands. The plaintiff sought to recover $6,342.32; the verdict of the jury was for $6,842.32. This evidently was due to some clerical error, and the judgment, therefore, will be modified by deducting therefrom the sum of $500. In all other respects it is affirmed.

Hall, J., and Lennon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1911.