## RUWITCH v. FRANKEL et al.
### No. 4981.

Circuit Court of Appeals, Seventh Circuit.

Dec. 19, 1933.

Rehearing Denied Jan. 30, 1934.

Charles P. Schwartz, of Chicago, Ill., for appellant.

Irving Herriott, Walter H. Eckert, Abe R. Peterson, Tom Leeming, A. N. Pritzker, and James H. Deming, Jr., all of Chicago, Ill., for appellees.

Before SPARKS, FITZHENRY, and PAGE, Circuit Judges.

SPARKS, Circuit Judge.

Appellant, a citizen and resident of Michigan, filed her amended bill in equity on behalf of herself and all other bondholders of Straus Bros. and Straus Bros. Investment Company, hereinafter referred to as the Straus firm, against appellees who are all citizens and residents of Illinois, Louis P. Frankel and Gustav Frankel, as individuals and as partners doing business as Frankel Bros., also against Herman S. Strauss, Esbico Management Corporation, Mohawk Finance Corporation, Straus Bros. Holding Corporation, and B. L. Rosset, C. J. Young, A. S. Grover, E. G. Krumrine, H. G. Zander, doing business as Protective Committee for bond issues underwritten and sold by the Straus firm.

Although not disclosed by the record, it is recited in appellees' brief and not denied by appellant that appellees filed their joint written motion to dismiss the amended bill

for the following reasons: (1) Lack of sufficient facts to constitute a cause of action; (2) lack of sufficient facts to warrant equitable relief; (3) lack of necessary parties; and (4) misjoinder of causes of action. The record discloses that, after argument of counsel, the amended bill was dismissed by the court at appellant's costs for want of equity, and from that judgment this appeal is prosecuted.

Since the suit was dismissed on the ground of the defects within the bill itself, it becomes necessary for us to set out that bill in some detail. In addition to the jurisdictional grounds, it is based upon the following alleged facts: Appellant irrevocably employed a firm of brokers and investment bankers, operating under the name of "Straus Brothers" and "Straus Brothers Investment Company" to act for her as her agent and fiduciary, in handling her money and investing it to the best of the firm's ability, and to her best advantage. The Straus firm from time to time associated itself with other brokers, architects, and builders in the acquisition of real estate and the issuing of what it termed "first mortgage gold bonds and bond issues, secured by the conveyance of said real estate to the firm or its agents as trustees." While this agency and fiduciary relationship were in effect, the firm distributed to appellant and others a number of first mortgage real estate gold bonds which purported to be secured by conveyances to the Straus firm or its agents, as trustees of real estate improved or about to be improved. Appellant is the owner of certain of these bonds (listing and describing them) in the aggregate principal amount of $22,500, being bonds of seventeen different issues, signed by that many different mortgagors, and secured by the same number of separate and distinct trust deeds, in sixteen of which Herman S. Strauss is named as trustee, while the Phillips State Bank is thus named in the other one.

The bonds, bond issues, and trust deeds were prepared by the Straus firm which reserved to itself, as trustees, agents, and attorneys, broad discretionary powers. Complete audits of the operations of the buildings were to be made to the Straus firm by the owners while the bonds remained outstanding; that firm was to collect and disburse all interest and principal to the bondholders and institute suit to enforce the payment of them in case of default, and it, as trustee, was appointed as agent of all bondholders in all matters pertaining to the trust deeds, including the taking possession of the buildings and properties therein described in case of default.

As a part of the agreement, the Straus firm undertook to, and did at its own expense, supervise the execution and delivery of all necessary documents and title papers and the proper disbursement of the money procured from appellant and others similarly situated. It also undertook to enforce the covenants of the trust deeds in case of default, and to do all proper and necessary things to secure for appellant the benefit of her securities so that her bonds and interest would be paid in full at maturity. The Straus firm promised that upon her demand before maturity it would repurchase her bonds, after deducting 1 per cent. service charge.

The Straus firm had an arrangement with the architects, brokers, builders, and makers of the bonds, with whom it did business, by which it was permitted to and did deduct and appropriate from the money received from the sale of the bonds, large sums as commissions and expenses, and for that reason it had bound itself at its own cost to act as agent and trustee for the bondholders, which facts were well known to appellees, the Frankels.

During June, 1930, many of the bond issues distributed by the Straus firm had declined in value and earning power, due to mismanagement of the buildings and properties held as security for the bonds, and to the further fact that the par values of the bond issues were greatly in excess of the loan values of the securities, and became defaulted or required some form of extension or reorganization. The Straus firm thereupon disregarded its duty and obligation to reorganize the real estate and conduct and manage it for the benefit of the bondholders, and fraudulently and without authority or consent of appellant and the other bondholders entered into a conspiracy with appellees, the Frankels, to defraud appellant. In furtherance of their scheme the control and ownership of the Straus firm was transferred for the sole purpose of avoiding its responsibility and that of its officers, and enabling the Frankels to profit at the expense of appellant and the other bondholders of the Straus firm. In order to carry out the plan the Frankels organized and used certain corporations under their domination and control, viz.: Esbico Management Company, Mohawk Finance Corporation, and others, not named, for the purpose of taking over, and

they did take over the financial and property management of the business of the Straus firm.

The Frankels then caused the Straus firm, its trustees, agents, and attorneys to exercise the powers under the trust deeds for the benefit of the Frankels rather than for the bondholders. By that means they obtained control and ownership of many of the buildings and properties given as security for the payment of appellant's bonds and those of other bondholders similarly situated, and are causing the rents, issues, and profits thereof to be collected. Out of these they are deducting large sums under the guise of service charges, fees, and commissions to trustees, attorneys, and agents. The Frankels under the name of the Straus firm have caused the bondholders to be circularized by mail and in person for the purpose of misrepresenting the condition of the securities. Because of the original employment of the Straus firm and its fiduciary relationship with respect to the bondholders, some of these bondholders have deposited their bonds with the Straus firm or its committees, trustees, or other nominees, with full power to act in their behalf, and many depositing bondholders have never signed or seen the deposit agreement, but, in reliance upon the aforesaid fiduciary relationship, have nevertheless deposited their bonds in the belief that the depositories, trustees, and committees were acting as agents for the Straus firm. As a result of this, the Frankels have been enabled to manage, control, and own the various properties described in the trust deeds to their sole interest and to the detriment of the bondholders' interests.

The Frankels, with full knowledge of the fiduciary relationship and agreement existing between the Straus firm and appellant and other bondholders, and without their knowledge or consent, have employed a protective committee for the Straus firm consisting of appellees, Rosset, Young, Grover, Krumrine, Zander, and Lawton, who are acting solely for their own and Frankels' benefit. This committee is pretending to act as a bondholders' committee, and, as such, is soliciting the bondholders to deposit their bonds under deposit agreements which give the Frankels and the committee full power to act for the bondholders under the provisions of the trust deeds, and the Frankels have undertaken to charge said bondholders with unreasonable and unnecessary costs, fees, and expenses contrary to the bondholders' agreement with the Straus firm. They are also attempting to appropriate for themselves the rents, issues, and profits of the buildings and properties and to obtain control and ownership of them, and are withholding the declaration of defaults and failing to file foreclosure proceedings and to care for and manage the buildings and properties, in order to compel appellant and other nondepositing bondholders to deposit their bonds and to submit to an unfair and inequitable plan of reorganization. As a part of the plan, the Frankels claim to be entitled to 5 per cent. commissions on all moneys expended by them during the time of reorganization and for five years thereafter, and, in lieu of said bonds and security, it is proposed to issue ten-year voting certificates entitling the holders to share in the reorganization, which certificates are to be subject to a first mortgage to the Frankels as security for the payment of all their supposed advances. They have full control and domination of the reorganization, and, unless the court restrains them, appellant and other bondholders will be irreparably damaged.

Various buildings, properties, and real estate involved in this action require attention, control, and management if appellant and other bondholders are to be repaid the money intrusted by them to the Straus firm. This property which was originally intended as security for the bondholders is now being held by the Frankels for their own benefit and profit and not as agents or trustees for appellant, and the rents, issues, and profits therefrom, according to information and belief of appellant, are being used by the Frankels to buy the equities of said buildings, properties, and real estate, and to pay encumbrances junior to those of appellant and other bondholders similarly situated, and to pay themselves, their trustees, agents, and attorneys large salaries.

The bill avers that appellant is afraid to deposit her bonds with the Frankels, or with any one controlled or dominated by them. She therefore requests the court, pending further orders, to restrain the Frankels and all persons acting for or under them from depriving her or any other bondholders similarly situated from depositing their bonds or participating in whatever benefit may accrue to them from depositing their bonds with the committee and becoming a part of the reorganization.

Appellant further asks for an accounting and that a receiver be appointed for all moneys and properties which have come into appellees' possession from the buildings and properties conveyed to the Straus firm or its.

officers or employees which is described in the trust deeds securing appellant's bonds; that a temporary and permanent injunction issue restraining appellees from expending any money, or incurring any expense in connection with their ownership, control, and management of the trust property securing appellant's bonds; and from circularizing or soliciting the holders of the Straus firm bonds to deposit their bonds with appellees or their nominees.

There are three contested issues: (1) Does the bill state sufficient facts to constitute a valid cause of action in equity? (2) Are the various mortgagors under the trust deeds described in the bill of complaint indispensable parties to the suit so as to make their nonjoinder a basis for dismissal? (3) Is the bill of complaint multifarious?

 We have analyzed the bill extensively and rather literally in order to present its theory fully, if possible, and in order that we may more clearly and concisely pass upon the issues presented. It would be difficult indeed to formulate a bill in equity which would contain more conclusions and fewer ultimate facts than this one. It is not necessary to plead evidentiary facts, but ultimate facts must be pleaded as a basis for the evidentiary facts, and from the alleged ultimate facts the court is to conclude whether or not a cause of action is presented. St. Louis v. Knapp, S. & Co., 104 U. S. 658, 26 L. Ed. 883; Garrett v. Louisville & Nashville R. R., 235 U. S. 308, 35 S. Ct. 32, 59 L. Ed. 242.

A bill of complaint in equity must set out with particularity all the material facts necessary to constitute a cause of action (Savage v. Worsham [C. C.] 104 F. 18), and, if fraud is relied upon, general charges of fraud are not sufficient, but the facts stated must be sufficient in themselves to show that the conduct complained of was fraudulent. Church v. Swetland (C. C. A.) 243 F. 289; Murphy v. Murphy, 189 Ill. 360, 59 N. E. 796. Where an accounting is sought with respect to a trust relation, specific facts must be set forth which give rise to the fiduciary relationship. Dickinson v. Kempner (D. C.) 193 F. 204. A motion to dismiss admits the well pleaded allegations, but it does not admit conclusions of law. Amalgamated Royalty Oil Corporation v. Hemme (C. C. A.) 282 F. 750; Standard Stoker Co. v. Lower (D. C.) 46 F.(2d) 678.

Aside from her own conclusions, appellant has presented no facts from which the court can infer the existence of a trust or fiduciary relationship existing between her

and the Straus firm; or that control and possession of that firm's assets had unlawfully passed to the Frankels; or that the Straus firm associated or collaborated with others in the creation, acquisition, and distribution of bonds; or that it reserved to itself broad discretionary powers with respect to the bonds; or that there was fraud and collusion; or that the Frankels have caused the Straus firm to exercise certain powers; or that it was the duty of either of them to notify the bondholders of said transfer of control and possession to the Frankels; or that there was mismanagement or misrepresentation; or that the properties were under the dominion and control of the Frankels and were being operated for the Frankels' benefit; or that there was a plan of reorganization; or that large salaries were paid; or that appellant had any right to participate in the rents and profits. The terms of no bond, or mortgage, or trust deed, or reorganization plan are disclosed. Whether they are oral or in writing we do not know. Whether either the Frankels or the Straus firm is a corporation, or whether the transfer of interest from the latter to the former was by transfer of stock or otherwise, or whether there has been default in the payment of any part of appellant's bonds or interest, the bill does not disclose, and there is no allegation that the rents and profits, for which appellant asks a receiver, were pledged as security, nor were there facts alleged from which we can say that she has any interest in them. For the reasons stated, we think the court was warranted in dismissing the bill. In view of this ruling it is quite unnecessary to pass upon the other questions presented.

Decree affirmed.