**WENZEL & HENOCH CONST. CO. v. METROPOLITAN WATER DIST. OF SOUTHERN CALIFORNIA.**

No. 7883.

District Court, S. D. California, Central Division.

March 24, 1937.

E. R. Young, W. H. Wadsworth, and John H. Mathews, all of Los Angeles, Cal., for plaintiff.

James S. Bennett, Charles C. Cooper, Frank G. Finlayson, James H. Howard, H. T. Morrow, and Arthur A. Weber, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

On March 17, 1933, at Los Angeles, Cal., the plaintiff, Wenzel & Henoch Construction Company, a Wisconsin corporation, qualified to do business in California, to be referred to as "the contractor," entered into a contract in writing with the defendant, the Metropolitan Water District of Southern California, a California municipal corporation, to be referred to as "the district," to do certain work described as the construction of the district's San Jacinto tunnel in Riverside County, Cal. This diversity of citizenship gives us jurisdiction.

In the performance of the contract, the contractor, on the same day, took possession of the rights of way for the works to be constructed, and paid out $919,009.-34, for the purchase of materials, plants and equipment, supplies, and the like, and for labor for their installation. In addition, it paid to the district $150,000 cash in lieu of a faithful performance bond. On January 15, 1935, F. E. Weymouth, general manager and chief engineer of the district, to be referred to as "the engineer," gave notice to the plaintiff to discontinue all work upon the ground that he was of the opinion that the contract had been "unnecessarily and unreasonably delayed."

Attacking this opinion, which led to the discontinuance of the work and termination of the contract, the contractor, in the first cause of action of its complaint at law, seeks damages in the sum of $5,713,929.95, $3,839,481.68 of which is for loss of profits and the remainder for other damages suffered.

The ground of attack is that the opinion of the engineer was so grossly erroneous as to amount to a fraud on the contractor, and that it was arrived at capriciously, arbitrarily, unreasonably, and fraudulently.

In amplification, it is alleged: Illness prevented the engineer from attending to his duties and supervising construction in the field. This was done by other engineers and subordinates who were without experience in the excavation and construction of tunnels where large flows of water had been encountered. For this reason, they were not qualified, and were unable, to arrive at a correct opinion as to the performance of the work. The engineer failed to make an adequate personal investigation on the ground, for the purpose of arriving at his final opinion, but relied on the inexpert opinion of others.

The following additional facts are pleaded:

In December, 1934, the district, as a part of its scheme to deprive the contractor of its contract and property, advertised for bids for deep-well pumping machinery for Cabazon shaft· of San Jacinto tunnel and circulated reports among different material houses at Los Angeles, which were supplying the contractor with materials and equipment, that it was taking over the construction of the tunnel. Pursuant to the same scheme, the engineer notified the contractor of his intention to withhold the amount of the last estimate for work performed on San Jacinto tunnel, due for the period from November 25, 1934, to December 25, 1934,.

and payable on January 10, 1935. The estimate was not paid on that day. The contractor notified the district that such failure was a breach of contract on its part. On February 10, 1935, the district withheld the estimate due the contractor for the work performed during the period from December 25, 1934, to January 25, 1935. Any temporary delay in the sinking of Potrero Shaft and in the construction of the tunnel, it is explained, was due not to the fault of the contractor, or to lack of men or equipment, but to the enormous quantities of water encountered by the contractor in the construction of San Jacinto tunnel and to bad and faulty ground encountered, which necessitated the timbering of the greater part of the tunnel.

On January 15, 1935, the district, through its agents, demanded possession of the properties, which was refused. Certain legal proceedings were had which were dismissed. On February 12, 1935, the district took possession of all the rights of way of San Jacinto tunnel.

After alleging that it has performed all the terms of the contract, from the 17th day of March, 1933, to the 12th day of February, 1935, when the district took forceable possession of the rights of way, the plaintiff asks damages in the amounts already given.

In a second count, the plaintiff seeks to recover $1,346,720.75 on a quantum meruit for work, labor, and materials. In a third count, it seeks to recover $150,-000 deposited with the district. And finally, a fourth count seeks to recover $161,306.53 on a quantum meruit for extra work.

The provision of the contract, under which the suspension took place, reads:

"7. *Suspension of Contract:* (a) If the work to be done under the contract shall be abandoned by the Contractor, or if the Contractor shall make a general assignment for the benefit of his creditors, or be adjudicated a bankrupt, or if a receiver of his property or business be appointed by a court of competent jurisdiction, or if this contract shall be assigned by him otherwise than as hereinbefore specified, or *if at any time the Chief Engineer shall be of the opinion that the contract is unnecessarily or unreasonably delayed,* or that the Contractor is wilfully violating any of the conditions or covenants of the contract, or of the specifications, or is executing the same in bad faith or not in accordance with the terms thereof, or if the work be not fully completed within the time named in the contract for its completion, or within the time to which a completion of the contract may have been extended as hereinbefore provided, the Chief Engineer, acting on behalf of the District, may by written notice instruct the Contractor to discontinue all work, or any part thereof, under this contract.

"(b) When such written notice is served upon a Contractor, as hereinafter provided in Section 8, he shall immediately discontinue the work or such part thereof as is covered by the notice, and shall not resume the same except by written instructions from the Engineer. In any such case the District may take charge of the work and complete it by a new contract or by force account. In so doing, the District may take possession of and use any of the materials, plant, tools, equipment, supplies, and property at every time provided by the Contractor for the purpose of his work. The District may procure other materials and provide labor for the completion of the same, or contract therefor, and charge the expense of completion by either method to the Contractor. These charges shall be deducted from such moneys as may be due or may at any time hereafter become due the Contractor, under and by virtue of this Contract, or any part thereof. And in case such expense shall exceed the amount which would have been due the Contractor under the Contract, if the same had been completed by him, he shall pay the amount of such excess to the District; and in case such expense shall be less than the amount which would have been payable under this Contract if the same had been completed by the Contractor, he shall have no claim to the difference; and when any particular part of the work is being carried on by the District, by contract or otherwise, under the provisions of this section, the Contractor shall continue the remainder of the work in conformity with the terms of his contract, and in such manner as in no wise to hinder or interfere with the persons or workmen employed, as above provided, by the District, by contract or otherwise, to do

any part of the work, or to complete the same under the provisions of this section." (Italics added.)

The defendant has moved that either the entire cause or the equitable cause of action contained in the first count, in so far as it charges fraud on the part of the engineer, be removed to the equity docket, and that the court determine there the suit of the plaintiff *to vacate and set aside the opinion,* notice, and order of the engineer, which form the basis for the termination of the contract.

It is apparent from the motion that the defendant treats the first cause of action as if it sought to rescind and cancel the opinion and notice. *There is no prayer in the complaint to that effect.*

The assumption of the defendant is based upon the fact that the plaintiff seeks to impugn the opinion, so as to deprive the consequent termination of the contract of factual or legal basis.

Back of the motion lies the contention that there can be no recovery until this opinion is set aside, and that it cannot be set aside except for fraud, because it is in the nature of the award of an arbitrator which can be assailed only for fraud, duress, mistake, and the like. See Dugan v. Phillips (1926) 77 Cal.App. 268, 246 P. 566. The law of California does not seem to consider the determination by an engineer of matters as to which a construction contract makes his decision final as being in the nature of an arbitration award. See Foster v. Carr (1901) 135 Cal. 83, 86, 67 P. 43; American-Hawaiian, etc., Co. v. Butler (1913) 165 Cal. 497, 133 P. 280, Ann.Cas.1916C, 44. But it considers it conclusive in the absence of fraud, bad faith, or mistake. The federal decisions accord. See Martinsburg & Potomac R. R. Co. v. March (1885) 114 U.S. 549, 5 S.Ct. 1035, 29 L. Ed. 255; Chicago, Santa Fe & California R. R. Co. v. Price (1890) 138 U.S. 185, 11 S.Ct. 290, 34 L.Ed. 917; United States v. Gleason (1899) 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; United States v. Hurley (C.C.A.8, 1910) 182 F. 776; Rialto Construction Co. v. Reed (1911) 17 Cal.App. 29, 118 P. 473; Connell v. Higgins (1915) 170 Cal. 541, 150 P. 769; Brown v. Aguilar (1927) 202 Cal. 143, 259 P. 735; Monson v. Fischer (1931) 118 Cal.App. 503, 505, 512, 5 P.(2d) 628; and see note on "Conclusiveness of Certificate or Decision of Architect or Engineer under Building or Construction Contract," 54 A.L.R. 1255. As we are dealing with a contract with a public body, we are of the view that the clause under discussion made the opinion of the engineer "that the performance of the contract is unnecessarily and unreasonably delayed" a final determination. See United States v. Gleason, supra; Martinsburg & Potomac R. R. Co. v. March, supra. The fact that the clause does not say so in so many words does not stand in the way of this interpretation. See Brown v. Aguilar, supra; United States v. Hurley (C.C.A. 8, 1910) 182 F. 776; 9 Corpus Juris, 722.

Clauses in construction contracts allowing their termination, if in the opinion of the architect or engineer the work is not proceeding with proper speed, are common and have been before the courts often. In interpreting them, they have held that such clauses *do not* give the right to terminate the contract arbitrarily but that the termination may be impeached for fraud or bad faith. See 9 Corpus Juris, 722; Wortman v. Montana Cent. R. R. Co. (1899) 22 Mont. 266, 56 P. 316, 317; Philadelphia, Wilmington & Baltimore R. R. Co. v. Howard (1851) 13 How. 307, 14 L.Ed. 157; Culbertson v. Ellis (C.C.Ind.1853) 6 Fed.Cas. p. 937, No. 3,461; Anvil Mining Co. v. Humble (1894) 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814.

The clause under consideration makes the opinion of the engineer the basis for suspension of work. The other clauses giving the district the right to finish the work by a new contract or by force account are, in effect, provisions for termination following that opinion.

The other contingencies in which the engineer may cause suspension of work are of such character as to indicate clearly that it was the intention of the parties to the contract that the determination of the engineer as to the progress of the work shall have finality. For the suspension of the work, upon written notice, may occur if the contractor makes a general assignment for the benefit of his creditors, or is adjudged a bankrupt, or if a receiver be appointed of his property or business, or if the contract is assigned in a manner other than that provided in the contract.

Clearly, these are facts which, if they happened, *could not be* the subject of any

controversy between the contractor and the district.

The failure to complete the work speedily and the other contingencies, the occurrence of which is made the subject of the opinion of the engineer, are placed in the same category, and given the same force. It is evident that it was the intention to place the opinion of the engineer upon the same basis as occurrences which are uncontrovertible in their nature. The only difference between the two kinds is their legal effect. In what we have called the uncontrovertible occurrences there would be no room for a judicial inquiry. The right to discontinue would flow from the very happening.

In the matters dependent upon opinion, a judicial inquiry could be had to determine whether the opinion was arbitrary or the result of fraud or mistake.

Subject to this qualification, *finality is attached to both kinds of acts.* See United States v. Gleason, supra; United States v. George A. Fuller Co. (C.C.A.8, 1926) 14 F.(2d) 813. Does it necessarily follow that the cause of action pleaded by the plaintiff is equitable?

■ The distinction between law and equity is maintained rigorously in the federal courts. But whether a cause of action is legal or equitable does not depend upon the form adopted, or the name which the pleader may have given to it. It depends upon the facts pleaded or the remedy sought. If the facts pleaded are such that their determination depends upon the application of the principles of equity, jurisprudence, the action is equitable. If the remedy sought calls for the exercise of the powers which only a chancellor can exercise, the cause of action is, likewise, equitable. See Blalock v. Equitable Life Assurance Society of the United States (C.C.A.5, 1896) 75 F. 43; Jones v. Mutual Fidelity Co. (C.C.Del.1903) 123 F. 506; Armstrong Cork Co. v. Merchants' Refrigerating Co. (C.C.A.8, 1910) 184 F. 199; Queen Insurance Co. of America v. Citro (C.C.A.7, 1932) 58 F.(2d) 107. Behind these principles is the fundamental fact that law and equity are dissimilar. The dissimilarity lies in the substantive rights which they administer. Even the reformed code procedure, which has abolished the distinction between actions at law and suits in equity and allows remedies both legal and equitable to be ad-ministered in the same forum and in the same action, has not abolished the substantive distinction between law and equity. To call for the intervention of a court of chancery, it is still necessary, under it, to allege special equitable grounds. See Yankwich: California Pleading and Procedure (1926) 99–100; De Witt v. Hays (1852) 2 Cal. 463, 56 Am.Dec. 352; Spect v. Spect (1891) 88 Cal. 437, at page 443, 26 P. 203, 13 L.R.A. 137, 22 Am.St.Rep. 314; Martin v. Howe (1922) 190 Cal. 187, 211 P. 453; Philpott v. Superior Court (1934) 1 Cal. (2d) 527, 36 P.(2d) 512, 36 P.(2d) 635, 95 A.L.R. 990; McCall v. Superior Court (1934) 1 Cal.(2d) 642, 95 A.L.R. 1019; Davis v. Security-First National Bank (1934) 1 Cal.(2d) 541, 36 P.(2d) 649.

■ In federal jurisprudence, the distinction is maintained even in the matter of pleading and forum. An equitable cause of action or an equitable remedy is not cognizable by the law side of the court, and the reverse. Nor is the joinder of legal and equitable causes of action permitted. See Bennett v. Butterworth (1850) 11 How. 669, 13 L.Ed. 859; Scott v. Neely (1890) 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; Morris v. Texas Working Barrel Mfg. Co. (C.C.A.5, 1926) 13 F.(2d) 977; American Creosote Works v. C. Lembcke & Co. (C.C.N.Y. 1908) 165 F. 809. The only change in these rules was achieved by the enactment of sections 274a and 274b of the Judicial Code (28 U.S.C.A. §§ 397, 398). Section 274a allows the amendment of pleadings in an action at law or a suit in equity where the action is brought in the wrong forum. Section 274b allows equitable defenses to be interposed in actions at law by answer, plea, or replication, without the necessity of filing a bill on the equity side of the court. Equity Rule 22, 28 U.S.C.A. following section 723, allows the transfer to the law side of a suit commenced in equity, which should have been brought, as an action at law, on the law side of the court. The object of the change wrought by sections 274a and 274b has been stated by Mr. Chief Justice Taft in Liberty Oil Co. v. Condon Bank (1922) 260 U.S. 235, at page 244, 43 S.Ct. 118, 121, 67 L.Ed. 232: "To be sure, these sections do not create one form of civil action as do the Codes of Procedure in the states, but they manifest a purpose on the part of Congress to

change from a suit at law to one in equity and the reverse with as little delay and as little insistence on form as possible, and are *long steps toward Code practice.*" If we apply the touchstone of these principles to the first count of the complaint, it is evident that the plaintiff does not seek equitable relief. *It seeks damages from the district for breach of contract.* The breach alleged is the prevention of completion of its contract by the district taking over the work. This, says the plaintiff, was done wrongfully. The defendant concedes that if the pleader had stopped here, no one could question that the cause of action was at law. But the pleader *did not* stop here. As the termination of the contract was made pursuant to the opinion of the engineer that its performance was unnecessarily and unreasonably delayed, the plaintiff challenges the basis of the notice to cease further operations by alleging that it was so grossly erroneous as to amount to fraud, was arrived at without sufficient knowledge of the facts and conditions existing in the construction, capriciously, arbitrarily, and fraudulently.

These allegtions would not, in themselves, be sufficient to charge fraud. Kent v. Lake Superior Ship Canal, Railway & Iron Company (1892) 144 U.S. 75, 92, 12 S.Ct. 650, 36 L.Ed. 352; St. Louis & S. F. R. R. Co. v. Johnston (1889) 133 U.S. 566, 10 S.Ct. 390, 33 L.Ed. 683; Ruwitch v. Frankel (C.C.A.7, 1933) 68 F.(2d) 52, 55.

They are particularized in the manner already outlined.

This portion of the complaint, says the defendant, makes the cause of action one for fraud. In their view, this opinion of the engineer stands in the way of the plaintiff's recovery. It must get it out of the way by proving fraud. The defendant concedes that a liberal interpretation of section 274b of the Judicial Code (28 U. S.C.A. § 398) gives to the plaintiff the right to plead these facts in a replication or reply. See dissent in Keatley v. United States Trust Co. et al. (C.C.A.2, 1918) 249 F. 296; Whitney Co. v. Johnson (C. C.A.9, 1926) 14 F.(2d) 24; Stamey v. United States (D.C.Wash.1929) 37 F.(2d) 188; Enelow v. New York Life Ins. Co. (1935) 293 U.S. 379, 55 S.Ct. 310, 79 L. Ed. 440; Adamos v. New York Life Ins. Co. (1935) 293 U.S. 386, 55 S.Ct. 315, 79 L.Ed. 444; Radio Corporation v. Raytheon Mfg. Co. (1935) 296 U.S. 459, 56 S. Ct. 297, 80 L.Ed. 327; Raytheon Mfg. Co. v. Radio Corporation of America (C. C.A.1, 1935) 76 F.(2d) 943; Farmers Bank & Trust Co. v. Public Service Co. of Indiana (D.C.Ky.1936) 13 F.Supp. 548; Freiberg v. Pierce (C.C.A.10, 1936) 83 F. (2d) 961. And it insists that the plaintiff should wait until the defendant pleads the determination of the engineer and then set forth these facts in a reply. Because this was not done, it would have us penalize the plaintiff, and forfeit its right to a jury trial, by transferring the entire action or the particular cause of action to the equity side.

■ I think this contention takes a narrow and unwarranted view of the jurisdiction of courts of law in fraud. Fraud *does not* give jurisdiction to a federal court of equity. Law may take cognizance of it.

In fact, it *must* do so if the remedy at law is adequate, under the direct mandate of section 267 of the Judicial Code (28 U.S.C.A. § 384). See Swayze v. Burke et al. (1838) 12 Pet. 11, 23, 9 L. Ed. 980; Field v. Seabury (1856) 19 How. 323, 333, 15 L.Ed. 650; Rees v. City of Watertown (1873) 19 Wall. 107, 122, 22 L.Ed. 72; Smith v. McIver (1824) 9 Wheat. 532, 6 L.Ed. 152; Phoenix Mut. Life Ins. Co. v. Bailey (1871) 13 Wall. 616, 20 L.Ed. 501; Parker v. Winnipisocgee Lake C. & W. Co. (1862) 2 Black, 545, 17 L.Ed. 333; Wagner v. National Life Ins. Co. (C.C.A.6, 1898) 90 F. 395; Southern Ry. Co. v. Clark (C.C.A.6, 1916) 233 F. 900; Enelow v. New York Life Ins. Co. (1935) 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440.

■ Courts of equity have declined repeatedly to exercise jurisdiction in cases of fraud where the relief could be obtained at law. And this, despite the fact that recovery at law could not be had without the court defeating or annulling, upon the ground of fraud, some preliminary instrument, such as a deed, agreement, release, settlement, or the like.

Thus: Field v. Seabury, supra (where the court recognized the principle that a deed fraudulently obtained could be voided at law); Lautz v. Gordon (C.C.N.Y. 1886) 28 F. 264 (which involved an agreement relating to a patent); Jones v. Mutual Fidelity Co., supra (which involved an illegal contract); Griesa v. Mutual Life Insurance Co. (C.C.A.8, 1909) 169

F. 509 (which involved cancellation of a policy of insurance obtained by fraud); Buzard v. Houston (1886) 119 U.S. 347, 7 S.Ct. 249, 30 L.Ed. 451 (which sought the annulment of an assignment of a contract for the sale of cattle and the reinstatement of a contract); Manchester Fire Assurance Co. v. Stockton Combined Harvester & Agricultural Works (C.C.Cal. 1889) 38 F. 378 (which involved the adjustment of a fire loss obtained fraudulently); Investors' Guaranty Corporation v. Luikart (C.C.A.8, 1925) 5 F.(2d) 793 (wherein a guaranty company sought to recover from a former manager and purchaser of a bank for fraud in the transfer of the bank); Henrietta Mills v. Rutherford County, North Carolina (C. C.A.4, 1929) 32 F.(2d) 570 (which involved a claim of fraud in a tax assessment); Central Florida Lumber Co. v. Taylor-Moore Syndicate (C.C.A.5, 1931) 51 F. (2d) 1 (which involved the cancellation of an option and the recovery of money paid under it); Raytheon Mfg. Co. v. Radio Corporation of America, supra, and Radio Corporation of America v. Raytheon Mfg. Co., supra (which involved a release); and Farmers Bank & Trust Co. v. Public Service Co. of Indiana, supra (which involved a compromise for personal injuries).

Germane to the discussion are also the following cases: Whitney Co. v. Johnson (C.C.A.9, 1926) 14 F.(2d) 24, where our own circuit court held that proof of fraud in inducing the execution of a release for liability for death was available at law; Neff & Fry Co. v. Ashmead (C.C.A.2, 1929) 36 F.(2d) 771, where a defense of fraudulent inducement in the execution of a contract for the construction of coal bins was held available at law; New York Life Ins. Co. v. Panagiotopoulos (C.C.A. 1, 1935) 80 F.(2d) 136, where the defense of fraud in securing a policy of insurance was held to be legal and not equitable and the action of the district court in transferring the cause to the equity side was reversed; Carver v. Mayes (D.C. Okl.1935) 10 F.Supp. 744, where fraud in securing a contract for the sale of an interest in a patent was held not to call for a transfer to the equity side; and Dunn v. Prudential Insurance Co. of America (D.C.Minn.1934) 8 F.Supp. 799, where the attempt of an insurance company to transfer an action at law upon a contract of insurance to the equity side of the court by interposing a defense of fraud and seeking cancellation was denied, the court holding that the defense was available at law. And see Davis v. Security-First Nat. Bank, supra; Philpott v. Superior Court, supra.

These cases indicate the variety of circumstances under which federal courts of equity have refused to take jurisdiction in cases of fraud when it was evident that an action at law for damages could determine the fraud issue and give an adequate remedy.

■  Adequacy of the remedy at law being a matter of defense, the defendant may waive it. See American Mills Co. v. American Surety Co. (1922) 260 U.S. 360, 361, 43 S.Ct. 149, 67 L.Ed. 306; Buffum v. Barceloux Co. (1933) 289 U. S. 227, 53 S.Ct. 539, 77 L.Ed. 1140; Mutual Life Ins. Co. of New York v. Markowitz (C.C.A.9, 1935) 78 F.(2d) 396.

■  However, if the plaintiff postulates the adequacy of the remedy at law, in a case involving fraud, by coming into a court of law and seeking damages, the recovery of which depends upon the determination of fraud in the doing of an act or in the execution of an instrument, it does not lie within the power of the defendant to block him by insisting that he belongs in a court of equity.

To allow the defendant to exercise such right would mean, in effect, to deprive the plaintiff of the right to determine, *for himself,* whether the remedy at law is adequate.

■  Here the plaintiff has not asked that the opinion of the engineer *be rescinded by a decree of court.* It has come into a court of law and asked for damages caused by the action of the district in denying to it the right to finish the work, following the notice of the engineer. It asks the court to disregard that notice, as being grounded on fraud. Under the authorities cited, it has the right to do so. Its prayer for damages should not be made to abide on the law side of the court until the allegations of fraud are determined on the equity side. The law side of the court has ample powers to determine whether the act of the engineer was fraudulent. If it so finds, it may proceed to determine the plaintiff's damage.

The plaintiff, by choosing a remedy at law—damages for breach of contract—

indicates that it is satisfied with the adequacy of the remedy it seeks. And the defendant *should not be* (and, legally, *he is not), in a position to compel the plaintiff to ask for the equitable remedy of rescission or cancellation, when the same result can be achieved by a determination of the existence or nonexistence of fraud,* incidental to an action for damages for breach of contract.

The motion to transfer to the equity side of the court will be denied.

Exception to the defendant.